No. 13035

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

———————————

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

BRUCE ELMER TAYLOR,

Defendant and Appellant.

———————————

Appeal from: District Court of the Fourth Judicial District,
Honorable Edward Dussault, Judge presiding.

Counsel of Record:

For Appellant:

Robert J. Campbell argued, Missoula, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Thomas A. Budewitz, Assistant Attorney General,
argued, Helena, Montana
Richard P. Heinz, County Attorney, argued, Polson,
Montana

———————————

Submitted: September 10, 1975

Decided: OCT 10 1975

Filed: OCT 10 1975

_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the district court, Lake County, from a conviction of the charge of sexual intercourse without consent. Prior to trial defendant challenged the jury panel, which challenge was denied. A jury trial followed resulting in a "guilty" verdict. Judgment was entered sentencing defendant to twelve years in the Montana state prison with six years suspended. Defendant appeals from that judgment and sentence.

The issue presented for determination is whether or not the selection of jurors for a criminal trial under sections 93-1301(4) and 93-1402, R.C.M. 1947, the procedural statutes for selecting jurors for the jury panel, is unconstitutional thereby depriving defendant of an impartial jury and violating Article II, Section 4, 1972 Montana Constitution, which guarantees the equal protection of the laws and prohibits discrimination based on social origin or condition.

On June 26, 1974, an Information was filed charging defendant with sexual intercourse without consent under section 94-5-503, R.C.M. 1947. At that time defendant pled not guilty.

On February 24,1975, defendant moved to discharge the jury panel. The motion was considered and denied at the time of trial on March 10, 1975.

Following a verdict of "guilty", defendant's motion for a new trial based upon alleged improper jury selection was denied at the sentencing on March 24, 1975. Judgment was entered and defendant appeals.

Defendant cites and argues a number of United States Supreme Court cases and cases from this Court in support of his position that the provisions of sections 93-1301(4) and 93-1402, R.C.M. 1947, are unconstitutional because the jury panel was taken

from those persons "Assessed on the last assessment roll of the county on property belonging to him or her." Defendant argues that such a "restrictive drawing" deprives him of the equal protection of the law thereby violating the Fourteenth Amendment of the United States Constitution and the Montana Constitution. Defendant further argues that this protection has been extended in the 1972 Montana Constitution by Article II, Section 4, which specifically declares what discriminatory factors are prohibited. Section 4 reads:

> "The dignity of the human being is inviolable. No person shall be denied the equal protection of the laws. Neither the state nor any person, firm, corporation, or institution shall discriminate against any person in the exercise of his civil or political rights on account of race, color, sex, culture, social origin or condition, or political or religious ideas."

In support of his argument defendant relies on State v. Hay, 120 Mont. 573, 194 P.2d 232; State v. Porter, 125 Mont. 503, 242 P.2d 984; Allen v. State, 110 Ga.App.56, 137 S.E.2d 711; Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L ed 1181; Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L ed 866; Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L ed 2d 599; Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L ed 2d 567; Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1900, 26 L ed 2d 523; Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L ed 2d 690.

We have no disagreement with the case authority cited by defendant nor the law established by that authority, however the case authority cited is not applicable to the instant case. Here, defendant raised no racial issues and the jury panel of Lake County consisted of both white and Indian citizens. In most of the cases cited and relied on by defendant the challenge was to the Fourteenth Amendment to the United States Constitution involving racial rights in elections, office holding, or voting rights in bond and school

board elections. The cited cases arose in parts of the United States where members of minority races were prevented from exercising their rights.

In the Montana case, State v. Hay, 120 Mont. 573, 194 P.2d 232, this Court found the trial court erred in picking additional needed jurors from jury box No. 3, persons located in the city of Helena, and in so doing deprived the appellant of a jury drawn countywide. Such is not the issue in the instant case.

To put the issue in proper perspective we will examine the three basic elements fundamental to the right to an impartial jury. (1) Was the jury drawn from a cross section of the community? (2) Was some significant or identifiable group excluded? (3) Was defendant prejudiced by the operation of the Montana statutes governing jury selection?

First, was the jury drawn from a cross section of the community? In Montana, until the 1975 legislature amended section 93-1402, R.C.M. 1947, jury lists were drawn from those persons assessed on the last assessment roll of the county of property belonging to him or her. State ex rel. Bennick v. District Court, _____ Mont. _____, 538 P.2d 1369, 32 St.Rep. 793. Here, defendant alleges that such a procedure discriminates against poor people and deprives them of an impartial jury because the list from which the jury was chosen was composed only of persons who pay property taxes. Does this violate defendant's right to equal protection of the law? We answer in the negative.

An impartial jury is described in the numerous cited cases as one in which the potential membership is drawn from a "cross section of the community". Thiel v. Southern Pacific Co., supra; Smith v. Texas, 311 U.S. 128, 130, 61 S.Ct. 164, 85 L ed 84; Glasser v. United States, 315 U.S.60, 62 S.Ct. 457, 86 L ed 680. The United States Supreme Court in its most recent case considering this question, Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692,

42 L ed 2d 690, 43 LW 4167,4169, fully reviews the numerous cases and makes these comments on constitutional guidelines from these cases:

> 1) Smith v. Texas, supra: "'[i]t is part of the established tradition in the use of juries as instruments of public justice that the jury be a body truly representative of the community.'"
>
> 2) Glasser v. United States, supra: "'* * * our notions of what a proper jury is have developed in harmony with our basic concepts of a democratic system and representative government' and repeated the Court's understanding that the jury 'be a body truly representative of the community * * * and not the organ of any special group or class.'"
>
> 3) Brown v. Allen, 344 U.S.443, 73 S.Ct. 397, 97 L ed 469: "'[o]ur duty to protect the federal constitutional rights of all does not mean we must or should impose on states our conception of the proper source of jury lists, so long as the source reasonably reflects a cross-section of the population suitable in character and intelligence for that civic duty.'"
>
> 4) Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L ed 2d 446, on the use of a six man jury: "'* * * that the number of persons on the jury should 'be large enough to promote group deliberation, free from outside attempts at intimidation, and to provide a fair possibility for obtaining a representative cross-section of the community.'"

The Supreme Court noted in _Taylor_ that since Smith v. Texas, supra, that it has consistently held that the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment. Montana has followed the fair cross section requirement as fundamental to a trial guaranteed by the Sixth Amendment. State v. Hay, supra; State v. Porter, supra. Further, this Court has held that a defendant is entitled to an impartial jury, not a particular juror. No claim is made here that defendant did not have an impartial jury. State v. Hay, supra; Petition of Boe, 156 Mont. 303, 481 P.2d 45; State v. Gates, 131 Mont. 78, 307 P.2d 248; State v. Moran, 142 Mont. 423, 384 P.2d 777; Ehni v. Northern P.Ry.Co., 152 Mont. 373, 450 P.2d 882.

This Court is convinced, under the facts set forth in the instant case, that the fair cross section requirement was not violated. While no technical evidence was offered or received, the transcript of the hearing before the court contains discussions, not disputed, of certain legal statistics and facts. These figures and facts were used by the district court to find neither prejudice nor discrimination.

At the time the jury was drawn from the last completed assessment roll, 1974, it contained more names than did the list of registered voters. The assessment roll in 1974 provided a list of 11,637 potential jurors, while the number of registered voters was 8,497. The official 1970 census showed a total population in Lake County of 14,445. Using the above figures, it is apparent approximately 80% of the population of the county were potential jurors prior to July 1, 1975, while approximately 59% of the population was currently registered. In addition, it is estimated that a great number of the 2,808 persons in Lake County who are not on the assessment rolls are juveniles, so that the class of people who pay no property taxes is not such a definable class as to provide a basis for objection on an equal protection ground. Too, all persons who do not pay taxes are not necessarily poor. Recent revelations on those who do not pay taxes seem to include many of the listed wealthy. Perhaps that is how they become wealthy.

Even if a class of poor people can be specifically identified, and it was not in this case, by its absence from the assessment rolls, such a class is so small as to be insignificant as compared to the facts in Taylor where 53% of the persons eligible for jury duty was female and no more than 10% of the persons on the jury wheel of the parish was female. Such a discrepancy was found to violate a fair cross section requirement by the federal court.

The second element---was some significant or identifiable group excluded from jury service, we also answer in the negative.

Counsel for defendant did not set forth case authority on the phrase "systematic and intentional exclusion of a class of persons from jury duty" that is applicable here. Much reliance was put upon the case of Turner v. Fouche, supra, where the Supreme Court held that a statutory system to select juries and school boards was unconstitutionally restricted to free-holders. In Turner 60% of the population of the county was Negro yet the system of selecting jury commissioners from the list of freeholders who in turn select the grand jury which, in its turn selected the members of the school board, resulted in a minority of Negroes on the grand jury and none on the school board. Turner as well as other cases relied on by defendant here, turned on the particular facts before the court in each case, and as we read Turner the holding was intended only to constitute a judgment on the evidence presented and did not indict any system based on tax rolls.

The use of tax lists for selecting jurors has been specifically upheld by federal court decisions. Brown v. Allen, supra. In Roach v. Mauldin, 391 F.2d 907, 908, the Circuit Court relied on Brown in holding that:

> "* * * in the absence of racial considerations
> the use of tax digests, which necessarily exclude
> nonproperty owners, seems to have been settled as
> not prima facie unconstitutional * * *."

Many of the cited cases note that any system used would result in the exclusion of some names. To hold the Montana system unconstitutional, we would have to be shown that an identifiable and significant class of people had been excluded. There is no evidence in the record to support such a finding.

The third element for consideration is whether the defendant was prejudiced by the operation of Montana statutes governing jury selection. We hold he was not.

Defendant has failed to show any prejudice against him or any injury affecting his right to an impartial jury resulting from any discriminatory practice of jury selection. Much discretion is left to the states, as it should be, in the various methods used in jury selections. Brown v. Allen, supra.

Montana's system of jury selection "reasonably reflects a cross section of the population" and defendant has failed to meet the burden of showing he was denied the benefit of an impartial jury as guaranteed by the 1972 Montana Constitution.

Judgment of the trial court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.