No. 00-831

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 2


STATE OF MONTANA,

Plaintiff and Respondent,

v.

PAUL BIRD,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kristina Guest, Appellate Defender's Office, Helena, Montana

For Respondent:

Mike McGrath, Montana Attorney General, Ilka Becker, Assistant Montana Attorney General, Helena, Montana; Dennis Paxinos, Yellowstone County Attorney, Billings, Montana

Heard: September 10, 2001

Submitted: September 18, 2001

Decided: January 15, 2002

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Paul Bird was convicted by a jury in the District Court for the Thirteenth Judicial District, Yellowstone County, of one count of partner or family member assault, a felony. He was sentenced to five years at Montana State Prison and designated a persistent felony offender. From this judgment Paul appeals. We reverse and remand for further proceedings consistent with this Opinion.

¶2 Paul raises several issues which we have restated for clarity as follows:

¶3 1. Whether one of the jurors at Paul's trial should have been removed for cause for expressing doubt about her ability to remain impartial while deciding Paul's case and whether Paul was prejudiced by the failure to remove this juror from the final jury panel.

¶4 2. Whether defense counsel rendered deficient performance during jury selection for not removing a juror, whom he had challenged for cause, for expressing concern over whether she could remain impartial and whether Paul was prejudiced by the failure to remove this juror from the final jury panel.

¶5 3. Whether the District Court violated Paul's constitutional right to appear in all criminal proceedings against him when the court excluded Paul from the in-chambers individual *voir dire*.

¶6 4. Whether Paul's right to a fair trial was prejudiced by a law enforcement officer's testimony, based on out-of-court statements made by the victim, that Paul threatened to throw the victim into the river.

¶7 5. Whether the State and the District Court improperly shifted the burden of proof to Paul when the State demanded to know why a witness had not been subpoenaed and the court ordered Paul to call the witness.

¶8 6. Whether defense counsel rendered deficient performance when he opened the door to testimony about alleged prior incidences of domestic violence between Paul and the victim.

¶9 Because we determine that Issue 3 is dispositive, we do not address Paul's remaining issues.

## Factual and Procedural Background

¶10 On February 28, 2000, the State charged Paul with partner or family member assault, a felony, in violation of § 45-5-206, MCA. The charge stemmed from an argument that ensued between Paul and his girlfriend Angela on the night of February 8, 2000. Angela had thrown away some letters that belonged to Paul and Paul became angry. Angela later testified that during the argument, Paul called her names and threatened to kill her. She also testified that he hit her in the head and stomach approximately nine times and that whenever she tried to leave, he would "slam" her back down.

¶11 On June 20, 2000, the State filed a notice of intent to introduce evidence of Paul's three prior convictions for domestic abuse. Defense counsel filed a motion and brief objecting to the introduction of this evidence. The District Court ordered that the State could not use any evidence of Paul's prior domestic abuse convictions in its case in chief. However, the court did allow the State to reserve the right to use this evidence on rebuttal.

¶12 At trial, before *voir dire* began, the District Court granted the State's motion to conduct individual *voir dire* in chambers of any prospective juror who had personal experiences with domestic violence. During the State's *voir dire*, several prospective jurors raised their hands indicating that they had had such personal experiences. The court recessed to meet with these prospective jurors individually in chambers. Both the prosecutor and defense counsel were in attendance, however, Paul was not.

¶13 During the in-chambers *voir dire*, one prospective juror explained that she had been an emergency room nurse and had dealt with people who had been battered. When asked if she could be impartial in this case, she responded that "there might be some latent anger things that I'm not sure about that might come up. I don't know." After a continued

discussion along these lines, defense counsel challenged this juror for cause, but the court denied the request.

¶14 Subsequently, of the nine prospective jurors questioned in chambers, six were removed for cause. After the seats of the removed jurors were filled with new jurors and after further *voir dire*, two additional jurors raised their hands wanting to speak privately. The court recessed stating, "I'll see everybody, including the two jurors that raised their hands in chambers. I mean everybody meaning counsel." Paul was again excluded from the in-chambers *voir dire*. Both of these jurors were removed for cause.

¶15 After both attorneys passed the panel for cause, the court recessed and met with counsel in chambers to allow counsel to exercise their peremptory challenges. Once again, Paul was not included in the in-chambers meeting.

¶16 Before defense counsel exercised his final peremptory challenge, he stated "I don't think there is anybody really bad left." Defense counsel then used his final peremptory challenge to remove someone other than the emergency room nurse who had expressed anger over domestic violence cases even though defense counsel had earlier challenged her for cause.

¶17 At the close of this in-chambers meeting, the prosecutor stated: "I just noticed the defendant wasn't in here, did we need to have him here?" The court responded, "I assume you wanted to waive his presence." To which Paul's counsel agreed, "That is fine. I asked him if he had any feelings about it one way or the other and he didn't. . . ."

¶18 Once trial began, Angela testified that she was afraid of Paul and that she could not call the police regarding the incident until the following day when Paul dropped her off at a job interview. Billings police officer Phillip Hageman, who had responded to Angela's call, testified that Angela told him that Paul had threatened to kill her by throwing her into the river. However, Angela admitted that she had no physical injuries from the incident and she declined any medical treatment.

¶19 Following the State's case in chief, defense counsel moved for a directed verdict but the court denied the motion. Paul then testified in his own behalf. He admitted that he and Angela had argued over the letters, but he denied hitting Angela or refusing to allow her to leave. On cross-examination, in response to Paul's testimony that his cousin John had been present during the argument, the State inquired why Paul had not asked John to testify.

Defense counsel moved for a mistrial arguing that the State was attempting to shift the burden of proof to Paul. The court denied defense counsel's motion and subsequently ordered defense counsel to call John as a witness.

¶20 John was living in the house with Paul and Angela and was at home at the time of this incident. John testified that although he had heard Angela and Paul in a heated argument, he did not see any physical violence between the two. Moreover, the day following the incident, John accompanied Paul and Angela while they did errands. John testified that Angela seemed her usual self and that she did not seem upset. In rebuttal, Angela was allowed to testify, over defense counsel's objections, about two prior occasions in which Paul had allegedly assaulted her.

¶21 The jury found Paul guilty and on October 18, 2000, the District Court sentenced Paul to five years in Montana State Prison and designated him a persistent felony offender. Paul appeals his judgment and sentence.

## Discussion

¶22 *Whether the District Court violated Paul's constitutional right to appear in all criminal proceedings against him when the court excluded Paul from the in-chambers individual voir dire.*

¶23 The federal constitutional right to be present at all criminal proceedings is one of the most basic rights contained in the Confrontation Clause of the Sixth Amendment. *Illinois v. Allen* (1970), 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353. "The defendant's right to be present at all proceedings . . . which may take his life or liberty is designed to safeguard the public's interest in a fair and orderly judicial system." *Sturgis v. Goldsmith* (9th Cir. 1986), 796 F.2d 1103, 1109.

¶24 In Montana, the right of a criminal defendant to be present at his trial is expressly guaranteed by the Montana Constitution: "In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel. . . ." Art. II, Sec. 24, Mont. Const.

¶25 Since the right to appear and defend in person is found within Montana's Declaration of Rights, it is a fundamental right. A right is "fundamental" under Montana's Constitution if the right is either found in the Declaration of Rights or is a right "without which other constitutionally guaranteed rights would have little meaning." *Butte Community Union v.*

*Lewis* (1986), 219 Mont. 426, 430, 712 P.2d 1309, 1311.

¶26 This Court recognized as early as 1922, when interpreting an identical provision of the 1889 Montana Constitution, that "the defendant must be present throughout the *entire* trial." *State v. Reed* (1922), 65 Mont. 51, 56, 210 P. 756, 757 (emphasis added). The Court stated in *Reed*:

> No principle of law, relating to criminal procedure, is better settled than that, in felony cases, nothing should be done in the absence of the prisoner. It is his unquestioned right "to be confronted with his accusers and witnesses." He has the legal right to be present when the jury are hearing his case, and at all times during the proceeding of the trial, when anything is done which in any manner affects his right. . . .

*Reed, 65 Mont. 51, 58, 210 P. 756, 758 (citation omitted).*

¶27 Numerous other jurisdictions have also held that the exclusion of a criminal defendant from *voir dire* is reversible error. *See, for example, United States v. Alikpo* (5th Cir. 1991), 944 F.2d 206 ("the defendant is sorely handicapped and can be of little assistance to counsel when he has not had the opportunity to hear the venire's responses to questions and observe their reactions to him and to the proceedings"); *State v. Garcia-Contreras* (Ariz. 1998), 953 P.2d 536 (holding that it was error to force defendant to choose between participating in *voir dire* in his prison attire or not being present for *voir dire*); *State v. Harris* (Wis.Ct.App. 1999), 601 N.W.2d 682 ("the interplay between potential jurors and a defendant, while often subtle, is both immediate and continuous" and the jurors "gesture and attitudes" must be scrutinized to ensure impartiality and "no transcript can recapture the atmosphere of the *voir dire*"); *State v. Dishon* (N.J. Super.Ct.App.Div. 1997), 687 A.2d 1074 (defendant's presence during jury impaneling is essential so that he can assist his attorney in the selection of an impartial jury. "He is entitled to hear questions intended to disclose a juror's bias, hostility or predisposition to believe or discredit the testimony of potential witnesses, and the juror's answers so that he has the opportunity to assess the juror's facial expressions and demeanor."); *People v. Bennett* (Ill.App.Ct. 1996), 669 N.E.2d 717 (defendant's constitutional rights were violated when defendant excluded from individual *voir dire* proceedings); *People v. Sloan* (N.Y. 1992), 592 N.E.2d 784 (defendant had fundamental right to be present during *voir dire* questioning as the questions "delved into attitudes and feelings concerning some of the events and witnesses involved in the very case to be heard"); *Boone v. United States* (D.C. 1984), 483 A.2d

1135 (defendant entitled to be personally present during individual bench conference *voir dire* proceedings because it would be "improbable to expect a lawyer to be able to relate those impressions gained at the bench to his client. Each impression is, at bottom, a personal one."); *State v. Carver* (Idaho 1972), 496 P.2d 676 (a defendant's presence at *voir dire* is crucial and having the accused present insures that he has first hand knowledge of the actions taken which lead to the eventual outcome of the trial).

¶28 In the case *sub judice*, the in-chambers *voir dire* was conducted specifically to elicit prospective jurors' personal feelings and experiences regarding domestic violence. Since Paul was excluded from the in-chambers *voir dire*, he never heard those prospective jurors responses. In particular, he did not have the opportunity to hear the emergency room nurse explain her biases in seeing repeat incidences of domestic violence. This prevented Paul from knowing about her prejudices and from insisting that defense counsel strike her with a peremptory challenge.

¶29 The State contends that Paul waived his right to be present during the in-chambers individual *voir dire* as evidenced by defense counsel's statement that Paul did not have any feelings one way or the other about being present. The State also contends that when the prosecutor raised the issue of Paul's absence, defense counsel had the opportunity to object to Paul's absence or secure his presence, but defense counsel failed to do either.

¶30 The State has confused the procedural process of exercising peremptory strikes with the substantive process of *voir dire*. The colloquy referred to by the State occurred after the in-chambers individual *voir dire* and at the conclusion of the in-chambers meeting to exercise peremptory challenges.

¶31 This Court has recognized the difference between the *voir dire* process and peremptory challenge proceedings. "[T]he act of the peremptory challenge of jurors is a pro forma execution of the decisions formulated during questioning." *State v. Hart* (1981), 191 Mont. 375, 392, 625 P.2d 21, 30, *cert. denied*, 454 U.S. 827, 102 S.Ct. 119, 70 L. Ed.2d 102. While it is not reversible error for a defendant to not be personally present during the peremptory challenge proceedings, a defendant's presence may be crucial during *voir dire*. *Hart*, 191 Mont. at 392, 625 P.2d at 30. In the case before us on appeal, defense counsel indicated that Paul did not want to be present during the act of the peremptory challenges of the jurors, however, this did not constitute a waiver of Paul's constitutional right to be present during the in-chambers individual *voir dire*.

¶32 The State argues that Paul's absence from the in-chambers individual *voir dire* did not result from any exclusionary action by the District Court, but was instead done with the full cooperation of defense counsel. The State maintains that by failing to object to the trial court ordering only counsel into the individual *voir dire*, defense counsel waived Paul's right to be personally present.

¶33 The State relies on *United States v. Gagnon* (1985), 470 U.S. 522, 529, 105 S.Ct. 1482, 1486, 84 L.Ed.2d 486, for the proposition that if a defendant is entitled to attend certain stages of the trial which do not take place in open court, the defendant or his counsel must assert that right at the time. In *Gagnon*, the defendants did not expressly waive their right to be present in the in-chambers *voir dire*. Nevertheless, the Supreme Court held that the defendants' total failure to assert their rights to attend the conference with the juror sufficed to waive their rights. *Gagnon*, 420 U.S. at 529, 105 S.Ct. at 1486.

¶34 However, unlike the case before us on appeal, *Gagnon* did not involve a defendant's right to be personally present during a critical stage of the trial. In *Gagnon*, the trial judge held an in-camera hearing, attended by Gagnon's counsel, to assess a juror's concern on observing Gagnon sketching portraits of the jury. The Supreme Court characterized the inquiry as a "minor occurrence" and held that Gagnon's constitutional rights had not been violated by his nonappearance at a non-crucial stage of the proceedings. *Gagnon*, 470 U.S. at 527, 105 S.Ct. at 1484-85.

¶35 The State also argues that even if this Court finds that the record is insufficient to show an express waiver, Paul had ample opportunity to object to his absence from the in-chambers *voir dire*, but he failed to do so. "Waiver is defined as the voluntary abandonment of a *known* right." *State v. Musgrove* (1978), 178 Mont. 162, 170, 582 P.2d 1246, 1251 (emphasis added) (citing 28 Am.Jur.2d 836, Estoppel and Waiver, Part 2, § 154). *See also Welsh v. Great Falls* (1984), 212 Mont. 403, 411, 690 P.2d 406, 411. This Court will not engage in presumptions of waiver; any waiver of one's constitutional rights must be made specifically, voluntarily, and knowingly. *Park v. Sixth Jud. Dist. Court*, 1998 MT 164, ¶ 36, 289 Mont. 367, ¶ 36, 961 P.2d 1267, ¶ 36 (citing *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461; *State v. Lucero* (1968), 151 Mont. 531, 538, 445 P.2d 731, 735).

¶36 Before a defendant can waive a fundamental right, "such waiver, to be recognized by the courts, must be informed and intelligent for there can be no waiver by one who does not know his rights or what he is waiving." *State v. Allison* (1944), 116 Mont. 352, 360,

153 P.2d 141, 145. In holding that the defendant in *Allison* had not expressly waived his right to remain silent, this Court stated:

> The rights guaranteed by the Constitution apply to all alike--the well-informed who know their rights as well as to the ignorant who never heard of such rights. There stands the right like the rock of Gibraltar and it so remains protecting the life and liberty of every person whether the particular person knows about it or not.

*Allison, 116 Mont. at 360, 153 P.2d at 144-45.*

¶37 In the instant case, neither the trial court, the prosecutor, or defense counsel informed Paul that he had a constitutional right to be present during the individual questioning of the jurors. Nor did the court give Paul the opportunity to choose to participate in the individual *voir dire*. Therefore, not only did Paul not voluntarily, intelligently, and knowingly waive his right to be present, he was never afforded the opportunity to waive that right.

¶38 Consequently, we hold that in the future, a trial court must explain to the defendant, on the record, the defendant's constitutional right to be present at all critical stages of the trial, including in-chambers individual *voir dire*, and that if a defendant chooses to waive that right, the court must obtain an on-the-record personal waiver by the defendant acknowledging that the defendant voluntarily, intelligently and knowingly waives that right.

¶39 In *State v. LaMere*, 2000 MT 45, ¶ 26, 298 Mont. 358, ¶ 26, 2 P.3d 204, ¶ 26, this Court explained how errors involving jury selection "indelibly affect the fairness of the trial" since those errors occur before trial. We identified in *LaMere* that jury selection errors are "structural" errors and as such, they are not amenable to harmless error review. *LaMere*, ¶¶ 39-50.

¶40 Paul's exclusion from the in-chambers individual *voir dire* proceedings was structural error and as such it undermined the integrity of the entire trial. Therefore, we reverse Paul's conviction and sentence and we remand for further proceedings consistent with this Opinion.

¶41 That said, the dissent has raised several contentions that deserve a response. First, the dissent maintains that before the commencement of the trial in this matter, Paul was given

notice of the State's intention to conduct individual *voir dire* with certain prospective jurors. However, the transcript in this matter gives no indication that Paul was present during the pre-trial proceeding in which the State requested permission from the court to conduct individual *voir dire*. The dissent also maintains that this procedure was no surprise to the defense and that the defense had "ample notice and opportunity to prepare for this eventuality." In reality, the State's request to conduct *voir dire* in this manner occurred only seconds before *voir dire* began--hardly "ample notice."

¶42 Second, it does not appear that Paul was aware that he had a right to be present during the in-chambers individual *voir dire*. Certainly the court's pronouncement prior to each individual *voir dire* session would have given Paul the impression that he did not have the right to be present. For instance, before the first individual *voir dire* session, the court commanded: "And at this time, those five people, counsel, and the Court will visit [] in my chambers." By the same token, before the second individual *voir dire* session, the court more particularly commanded: "I'll see everybody, including the two jurors that raised their hands in chambers. I mean everybody meaning counsel."

¶43 Third, the dissent asserts that after the State questioned the court about Paul's absence from the process, defense counsel informed the court that he had discussed it with Paul and that Paul's absence was not a problem. However, as we discussed earlier in this Opinion, this discussion did not occur until the tail-end of the in-chambers meeting to exercise peremptory challenges, well after both individual *voir dire* sessions had taken place. The dissent is mistaken in assuming that defense counsel's waiver of Paul's right to be present during the in-chambers meeting to exercise peremptory challenges also encompassed a waiver of Paul's right to be present during the two previous individual *voir dire* sessions. Clearly defense counsel was referring only to the situation at hand--the in-chambers meeting to exercise peremptory challenges.

¶44 Fourth, the dissent takes exception to our reliance on *Allison* stating that the Court in *Allison* required an express waiver of the defendant's constitutional rights only because the defendant was not represented by counsel. While the dissent is correct that the defendant in *Allison* was not represented by counsel during one part of the process, that fact does not change the central ruling of *Allison* that to be recognized by the courts, the waiver of a fundamental right "must be informed and intelligent." *Allison*, 116 Mont. at 360, 153 P.2d at 145.

¶45 Fifth, the dissent expresses its agreement with *United States v. Corcoran* (2d Cir.

1996), 100 F.3d 944, *cert denied*, 517 U.S. 1228, 116 S.Ct. 1864, 134 L.Ed.2d 962, an unpublished disposition wherein the Second Circuit Court of Appeals adopted the holding of an earlier opinion by the United States District Court for the Eastern District of New York. In that case, *United States v. Corcoran* (E.D.N.Y. 1994), 855 F. Supp. 1359, the court denied the defendant's motion for a new trial on the basis that defense counsel's waiver of the defendant's right to be present at a side-bar conference with a prospective juror was valid.

¶46 Contrary to the dissent's suggestion that *Corcoran* supports its position, the court's reasoning in *Corcoran* is more supportive of the position expressed in this Opinion. In the first place, the court in *Corcoran* relied in part on the United States Supreme Court's holding in *Gagnon*, which, as we established earlier in this Opinion, only applied to a defendant's absence from a non-crucial stage of the trial. Next, the court in *Corcoran* concluded that the side-bar conference at issue in that case, unlike the case *sub judice*, concerned a question of law and that a defendant need not be present at a conference or argument upon a question of law. *Corcoran*, 855 F. Supp. at 1377. Finally, the *Corcoran* court noted that the defendant did not suffer any prejudice as a result of his absence from the side-bar conference because the court excluded the juror who was the subject of the side-bar. *Corcoran*, 855 F. Supp. at 1377.

¶47 The court in *Corcoran* cited with approval passages from two earlier Second Circuit cases. These passages are particularly relevant to and supportive of our holding in this case. "[A] waiver by counsel of a defendant's right to be present during the proceedings is valid when made *in the presence of the defendant*." *Corcoran*, 855 F. Supp. at 1376 (emphasis added) (quoting *United States v. Doe* (2d Cir. 1992), 964 F.2d 157, 159, *cert. denied*, 506 U.S. 1009, 113 S.Ct. 628, 121 L.Ed.2d 560). And, although a waiver may come from a defendant's attorney because there is no federal constitutional provision requiring otherwise, "it is certainly preferable that the waiver *come from the defendant directly*." *Corcoran*, 855 F. Supp. at 1376 (emphasis added) (quoting *Polizzi v. United States* (2d Cir. 1991), 926 F.2d 1311, 1322).

¶48 Finally, and while not involving the same issue, it is worth, again, refering to *LaMere* and to this Court's discussion of the critical importance of jury selection in assuring an accused the right to a fair trial. We stated in *LaMere*:

> the impartiality of the jury goes to the very integrity of our justice system, and the right to an impartial jury is so essential to our conception of a fair trial that its

violation cannot be considered harmless error.

*LaMere, ¶ 50. Given the importance of this fundamental right to a fair and impartial jury, it cannot but follow that a defendant's right to be personally present during the critical stage at which the jury is chosen, must be jealously guarded and preserved against all but the accused's personal, on-the-record, knowing, intelligent and voluntary waiver. The record before us ably demonstrates that Paul was not given the opportunity to make such a waiver, nor did he do so.*

¶49 Reversed and remanded for further proceedings.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ PATRICIA COTTER

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

Justice Jim Rice dissenting.

¶50 I respectfully dissent.

¶51 As it did in the similar case of *State v. Tapson*, 2001 MT 292, 307 Mont. 428, the Court ignores longstanding precedent in reaching its decision herein. Further, the Court misapprehends the fundamental role of defense counsel in criminal proceedings.

¶52 Before the commencement of the trial in this matter, Defendant Bird was given notice of the State's intention to conduct individual *voir dire* with prospective jurors who had

experiences with domestic violence. The procedure undertaken was no surprise to the defense, which had ample notice and opportunity to prepare for this eventuality.

¶53 Thus, the defense had been fully advised when the anticipated time came to conduct individual *voir dire*. Yet, no objection of any kind was made to the procedure by the defense. By participating in the procedure without objection, the defense fully consented to the procedure, and to the presence or absence of the people in the room at the time it was conducted.

¶54 In a case decided last year, involving an alleged violation of a constitutional trial right, we stated:

> In addition to requiring a timely objection, we have held that the objection must specify what authority, rule, statute or constitutional provision might be violated by the court's decision in order to preserve the issue for appeal; the objector has an obligation to make the basis for the objection clear to the court so that the district court has an opportunity to correct itself.

*State v. LaDue, 2001 MT 47, ¶ 29, 304 Mont. 288, ¶ 29, 20 P.3d 775, ¶ 29. This principle is so fundamental and longstanding from cases decided long before LaDue that citation to authority is hardly necessary. Objections are required during trial, both to give opportunity for the trial court to correct a problem, and to preserve an issue for appeal. Bird failed to do so. Yet, the Court ignores this principle altogether.*

¶55 Beyond failing to object, the defense fully consented to Bird's absence from the individual *voir dire* process. "We will not put a district court in error for an action in which the appealing party acquiesced or actively participated." *State v. Harris*, 1999 MT 115, ¶ 32, 294 Mont. 397, ¶ 32, 983 P.2d 881, ¶ 32. This particular legal principle is not important today, either. Perhaps it will be back in vogue on another day.

¶56 And more than failing to object, and fully consenting to Bird's absence, defense counsel here was questioned about Bird's absence from the process. After the issue was specifically identified, defense counsel informed the court that he had previously discussed it with Bird, and that Bird's absence was not a problem. Again, after this specific prompting, counsel offered no objection, and fully consented to Bird's absence. From this record, I would conclude that Bird, through his counsel, waived his right to be present.

¶57 The Court holds at ¶ 35 that there was not a valid waiver because a party can only waive a *known* right. A defendant's knowledge of his rights prior to waiver is indeed important. That is why the United States Supreme Court has stated:

> "Even the intelligent and educated layman has small and sometimes no skill in the science of law. . . . He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence."

*Gideon v. Wainright (1963), 372 U.S. 335, 345, 83 S.Ct. 792, 797, 9 L.Ed. 2d 799, 805-06, quoting Powell v. Alabama (1932), 287 U.S. 45, 68-69, 53 S.Ct. 55, 64, 77 L.Ed. 158, 170. Thus, it is defense counsel who embodies a defendant's knowledge of his own legal rights.*

¶58 However, the Court, not satisfied with the *Gideon* principle, refuses to honor the informed choice made by Bird's counsel at trial, and instead honors Bird's change of mind on appeal, to the prejudice of the State and the victim. In so doing, the Court misapprehends the fundamental role that defense counsel are to play in criminal proceedings-a role which, like that of the State's, is to be conducted without the prompting or assistance of this Court. I would let defense counsel fulfill its duty as commissioned in *Gideon v. Wainright*. There are remedies if counsel fails to do so.

¶59 The Court relies on *State v. Allison* (1944), 116 Mont. 352, 153 P.2d 141, for its conclusion that Bird's constitutional right was not adequately waived. It trumpets that constitutional rights are like the Rock of Gibraltar that must be expressly waived, and therefore, as in the 1944 *Allison* case, this case must be reversed. Amid the trumpeting, however, the Court has overlooked the critical point: the *Allison* Court required an express waiver of Allison's constitutional rights precisely because Allison was not represented by defense counsel. For good reason, the Court found that the actions of law enforcement-ordering Allison to give testimony against himself in a hastily convened proceeding in Allison's tavern without benefit of counsel-could not withstand constitutional scrutiny. Such occurrences are invalid per se under *Gideon v. Wainright*. I doubt the Court actually views *Allison* as controlling law today.

¶60 Even so, the facts here are quite different than in *Allison*. Bird was represented by counsel. Both Bird and his counsel had been notified in advance of the proposed *voir dire*

procedure. Bird's counsel discussed Bird's right to be present with Bird, and Bird chose to be absent.

¶61 I would find that Bird properly waived his right to be present during the individual *voir dire*. I agree with *United States v. Corcoran* (2nd Cir.1996), 100 F.3d 944 (adopting District Court's opinion), *cert. denied,* 517 U.S. 1228, 116 S.Ct. 1864, 134 L.Ed.2d 962, wherein the Second Circuit Court found that waiver by defense counsel of the defendant's right to attend an individual *voir dire* conference was valid, and with the principle set forth in *United States v. Gagnon* (1985), 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed. 2d 486, that the district court need not obtain an express on-the-record waiver to excuse a defendant from every trial conference that the defendant may have a right to attend. Defense counsel's consent is sufficient. I would further find, honoring our longstanding precedent, that Bird failed to preserve this issue for appeal by failing to object and by consenting to the procedure. I would affirm his conviction.

/S/ JIM RICE