JUSTICE LEAPHART,
dissenting.
¶63 I dissent. The right not to “be again put in jeopardy for the same offense” is a fundamental right under Article II, Section 25 of the Montana Constitution. Courts should “not presume acquiescence in the loss of fundamental rights.” Barker v. Wingo, 407 U.S. 514, 525-26, 92 S. Ct. 2182, 2189 (1972) (citing Ohio Bell Tel. Co. v. Public Utilities Commn., 301 U.S. 292, 307, 57 S. Ct. 724, 731 (1937)). The Court in the present matter has done just that. Based upon one defense counsel’s statement that “I have nothing to say, Your Honor” and the other counsel’s thanking the State for coming forward with its concerns, this Court presumes that Cates waived his right to object to the District Court’s sua sponte declaration of a mistrial. Notably, there is nothing indicating that Cates himself was asked whether he wanted his trial discontinued for the reasons propounded by the State; that is did he want to waive his fundamental right not to “be again put in jeopardy for the same offense?” In the absence of any indication that Cates himself actually consented to the District Court’s sua sponte mistrial, the Court picks up its divining rod and goes in search of acquiescence under the “totality of the circumstances” test. Even assuming that such a subjective test is appropriate, the totality of the circumstances shows that once the trial court announced that it was sua sponte declaring a mistrial, the court did nothing more than look at defense counsel and say, “Mr. Oaas.” The court did not specifically ask whether counsel (or more importantly, Mr. Cates) objected to the mistrial. Furthermore, *61 there was certainly no inquiry made of the defendant as to whether he wanted to waive any objection to the granting of a mistrial upon grounds which would not even remotely satisfy the manifest necessity standard.
¶64 In my view, given the fundamental nature of the Double Jeopardy Clause, a defendant should not be deemed to have waived his objection to a mistrial absent a specific, on-the-record waiver from the defendant himself. See State v. Bird, 2002 MT 2, ¶ 38, 308 Mont. 75, 43 P.3d 266 (if a defendant chooses to waive his right to be present at a critical stage of the trial, the court must obtain an on-the-record personal waiver of that right). This would obviate the need to interpret the statements, silence or body language of counsel. In the double jeopardy context, the stakes are too high for such subjective “totality of the circumstances” interpretation.
¶65 The need for an explicit waiver is all the more compelling when, as here, the basis for the mistrial does not even approach the threshold of manifest necessity. Traditionally, manifest necessity requires a “high degree” of necessity due to circumstances not attributable to the state (e.g., the jury is unable to reach a verdict, U. S. v. Wecht, 541 F.3d 493 (3d Cir. 2008); a juror is excused due to a language barrier, U. S. v. Campbell, 544 F.3d 577 (5th Cir. 2008)). The doctrine of manifest necessity does not allow a party to take advantage of its own mistake or error in, for example, referencing inadmissible evidence. If it did, then the state would essentially be in complete control of when and whether a trial could be aborted. For example, the state might determine that its witnesses were not holding up under cross-examination or that the jurors were not reacting positively to the state’s case. In such instances, the prosecutor or one of his witnesses could make an “inadvertent” reference to an inadmissible confession. Having done so, it could then conveniently argue that the record had been poisoned; that the only remedy was a mistrial. The state, through its own conduct, could thereby obtain a new jury and a chance to shore up its evidence. This is precisely the type of maneuvering that the Double Jeopardy Clause is designed to prohibit. In Illinois v. Somerville, 410 U.S. 458, 93 S. Ct. 1066 (1973), the United States Supreme Court recognized that a mistrial is constitutionally permissible when there is a fatal defect in the proceedings. For example, declaring a mistrial when a juror was disqualified because he had served on the grand jury, Thompson v. U. S., 155 U.S. 271, 15 S. Ct. 73 (1894), or where the trial judge directed the case moved back to the pleading stage because, after jeopardy had attached, it was *62 discovered that the defendant had not pleaded to the indictment, Lovato v. New Mexico, 242 U.S. 199, 37 S. Ct. 107 (1916). While the Court recognized that manifest necessity exists when the prosecution is in a no-win posture because of a legal defect that would provide relief from conviction, this is not inevitably so. Wayne LaFave et al., Criminal Procedure Vol. 6 § 25.2(d) 618 (3d ed. West 2008). The United States Supreme Court in Somerville cautioned that, “the declaration of a mistrial on the basis of a rule or a defective procedure that would lend itself to prosecutorial manipulation would involve an entirely different question ....”
¶66 The concern with prosecutorial manipulation came into play in Downum v. U. S., 372 U.S. 734, 83 S. Ct. 1033 (1963), where the Court held that there was no manifest necessity when the prosecution, knowing that a witness had not been found, proceeded with jury selection and then, when the witness failed to appear, moved for a mistrial due to lack of a crucial witness. Although the prosecutor in Downum had not manipulated the motion for a mistrial in order to save a case where he misjudged the strength of the state’s evidence, “the mistrial was sought to save a case that appeared to be headed toward an acquittal because of an event the prosecutor could have anticipated. LaFave, Criminal Procedure at 618. The Somerville majority distinguished Downum noting that the mistrial there had “operated as a post-jeopardy continuance to allow the prosecution an opportunity to strengthen its case.” Somerville, 410 U.S. at 469, 93 S. Ct. at 1073. As in Downum, the present case involves a situation which the prosecutor could have and should have anticipated. In light of our decision in State v. McKee, 2006 MT 5, 330 Mont. 249, 127 P.3d 445, in January of 2006, some eleven months prior to the Cates trial, the State should have anticipated that the statement from Cates after he requested to speak with his parents was clearly inadmissible. Despite this precedent, the State forged ahead and referenced Cates’s admissions in its opening statement. The State should not be allowed to bootstrap itself into manifest necessity by references to clearly inadmissible evidence. As set forth above, such a rule is patently subject to manipulation.
¶67 Although the Court carefully relies on acquiescence rather than manifest necessity, I would conclude that where, as here, the element of manifest necessity is so completely lacking, the acquiescence/consent prong must be all the more compelling; that is, consent must be explicit, on-the-record, and from the defendant himself. Vague statements from defense counsel do not suffice.
*63 ¶68 I do not agree that Cates, in effect, consented to the court’s declaration of a mistrial given that he previously made two motions for mistrial of his own. As the United States Supreme Court noted in U.S. v. Dinitz, 424 U.S. 600, 96 S. Ct. 1075 (1976), “[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retains primary control over the course to be followed in the event of such error.” Under our Court’s approach, the defendant, having made a motion of his own has lost the element of control in that he is thereby deemed to have agreed that the proceedings can be aborted for any reason, even a reason not raised in his motion, or more importantly, even a reason which does not remotely suggest manifest necessity.
¶69 As the Court noted in Dinitz, the element of control is “error” specific (“the course to be followed in the event of such error”). (Emphasis added.) Thus moving for a mistrial on the basis of one alleged error does not amount to consent to a mistrial on an entirely separate error, particularly an error which is entirely of the State’s own making. As the present case graphically illustrates, under that scenario, it is the State that is in control.
¶70 This case presents the classic situation where the exception (tacit consent) swallows the rule of no re-trial absent manifest necessity.