DA 11-0699

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 70

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

JAMES RONALD WILSON,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and For the County of Rosebud, Cause No. DC 09-34
Honorable Gary L. Day, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         Wade Zolynski, Chief Appellate Defender, Koan Mercer, Assistant Appellate
Defender; Helena, Montana

      For Appellee:

         Timothy C. Fox, Montana Attorney General, Tammy Ann Hinderman,
Assistant Attorney General; Helena, Montana

         Michael B. Hayworth, Rosebud County Attorney; Forsyth, Montana; Dan
Guzynski, Assistant Attorney General, Special Deputy County Attorney;
Helena, Montana

                     Submitted on Briefs:  January 16, 2013
                                Decided:  March 19, 2013

Filed:

_____
                               Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 James Wilson (Wilson) appeals his conviction in the Sixteenth Judicial District, Rosebud County. Wilson argues that the District Court deprived Wilson of his fundamental right to be present at all critical stages of the proceedings against him. Wilson was not present at a sidebar conference during jury selection after which the District Court removed a potential juror from the jury pool. We affirm.

¶2 Wilson presents the following issue on appeal:

¶3 *Whether Wilson's absence from the sidebar conference during jury selection requires reversal of the trial verdict?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶4 Wilson was drinking at the Whiskey Gulch Saloon in Colstrip, Montana, on December 10, 2009. Jason Burnett, Spencer Benson, Heath Becker, Terran Harris and a group of friends also were at Whiskey Gulch Saloon to celebrate Burnett's recent engagement. Burnett's family owned the saloon. Wilson started a fistfight with Harris. Burnett and others helped to break up the fight. Burnett ordered Wilson to leave.

¶5 Wilson returned to the saloon approximately thirty minutes later with a gun. Becker was standing outside the saloon near the back deck. Wilson killed Becker with a shot to his head. Benson also was outside the saloon near his own car. Wilson killed Benson with a shot to his chest. Wilson then entered the saloon and walked toward Burnett and his friends. Wilson shot Burnett in the head, injuring, but not killing Burnett. Harris and others disarmed Wilson.

2

¶6 The State charged Wilson with deliberate homicide. The list of potential jurors included several of the EMTs who had responded to the shooting. The Court discussed this fact with the parties at the beginning of the jury selection process. The prosecutor noted that he had listed these same EMTs as potential witnesses. The prosecutor explained that he no longer anticipated calling any of the EMTs as witnesses. As a result, the prosecutor would not stipulate at that time that all of the EMTs were unfit for jury service.

¶7 The first group of potential jurors called by the clerk included Amanda McCarthy (McCarthy), one of these EMTs. The record reflects the following interaction:

> THE COURT: Would the clerk call the next prospective juror?
> THE CLERK: Amanda M. McCarthy.
> [DEFENSE COUNSEL]: Your Honor, may we have a sidebar with this juror?
> (Wherein, a sidebar is held with all attorneys and the Court in attendance.)
> THE COURT: I'm sorry, Ms. McCarthy. We should have caught this ahead of time.
> By stipulation you are excused. Thank you.

¶8 Wilson was present in the courtroom during the jury selection process, including during this interaction. The court reminded counsel and informed Wilson at the beginning of the jury selection in Wilson's trial that Wilson had a right to be present. The District Court stated that "the Defendant must always be present. I know we all understand that rule. But at every conference in here, outside the presence of the jury, anything like that, I will expect – jury instructions being settled, anything like that, the Defendant must be present." Wilson did not join his counsel at the sidebar conference. The jury found Wilson guilty of deliberate homicide, attempted deliberate homicide, and negligent homicide. The District Court sentenced Wilson to 220 years at the Montana State Prison. Wilson argues that the District

3

Court violated his fundamental right to be present at all critical stages of the proceedings when he was absent from the sidebar conference after which the District Court removed McCarthy from the pool of potential jurors.

## STANDARD OF REVIEW

¶9 We exercise plenary review over constitutional questions, including alleged violations of a criminal defendant's right to be present at critical stages of the proceedings against him. *State v. Charlie*, 2010 MT 195, ¶ 21, 357 Mont. 355, 239 P.3d 934.

## DISCUSSION

¶10 *Whether Wilson's absence from the sidebar conference during jury selection requires reversal of the trial verdict?*

¶11 Both the Montana Constitution and the United States Constitution guarantee a defendant the right to be present at all "critical stages" of the criminal proceedings against him. *State v. Matt*, 2008 MT 444, ¶¶ 16-17, 347 Mont. 530, 199 P.3d 244 (partially overruled on other grounds by *Charlie*, ¶ 45); *Charlie*, ¶ 40. A critical stage includes "any step of the proceeding where there is potential for substantial prejudice to the defendant." *Matt*, ¶ 17. A violation of a defendant's right to be present at all critical stages does not require automatic reversal. *State v. Price*, 2009 MT 129, ¶ 24, 350 Mont. 272, 207 P.3d 298. We reverse for a new trial only if the defendant suffered prejudice from missing a critical stage. *Price*, ¶ 24. We emphasize, however, that a trial court should make every effort to ensure that a defendant appears at all critical stages of the proceedings, or, in the alternative,

4

that the trial court accepts on the record the defendant's waiver of his right to appear at a particular proceeding.

¶12 We generally first consider whether the defendant missed a critical stage of the proceedings. *Matt*, ¶ 19; *Price*, ¶ 23. We next consider whether the defendant waived his right to be present at the critical stage of the proceedings. *Matt*, ¶ 23; *Price*, ¶ 23. We finally consider whether this constitutional violation of missing a critical stage caused prejudice to the defendant. *Matt*, ¶ 38; *Price*, ¶ 24.

¶13 This Court has not yet addressed whether a sidebar conference during voir dire constitutes a critical stage. We conclude, however, that Wilson's absence from the sidebar conference did not cause him prejudice. Accordingly, we need not consider the initial questions of whether the sidebar conference constituted a critical stage of the criminal proceedings or whether Wilson waived his right to attend. *See Price*, ¶ 25. We instead will assume for the purposes of our analysis that Wilson missed a critical stage of the criminal proceedings and that he did not waive his right to be present. *See Price*, ¶ 25.

¶14 For the prejudice analysis, the State bears the burden of persuasion that no reasonable probability exists that this constitutional violation caused prejudice to Wilson. *Charlie*, ¶ 45. The State cannot meet this burden of persuasion if Wilson's absence from the sidebar conference constituted a structural error. A structural error contaminates the very framework within which the trial proceeds. *Matt*, ¶ 32. The State could not demonstrate that no reasonable probability of prejudice exists due to the fact that structural errors "necessarily

5

render a trial fundamentally unfair." *Matt*, ¶ 32. Structural errors therefore require automatic reversal. *Matt*, ¶ 32.

¶15 Wilson argues that his absence from the sidebar conference constituted a structural error. The United States Supreme Court has recognized only a limited number of structural errors. *Matt*, ¶ 31. These structural errors include the lack of an impartial trial judge, *Tumey v. Ohio*, 273 U.S. 510, 47 S. Ct. 437 (1927), total deprivation of the right to counsel, *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792 (1963), and the right to self-representation at trial, *McKaskle v. Wiggins*, 465 U.S. 168, 104 S. Ct. 944 (1984). *See Matt*, ¶ 31. This Court determined under the Montana Constitution that a defendant's absence during the voir dire questioning of a potential juror constituted a structural error. *State v. Bird,* 2002 MT 2, ¶ 40, 308 Mont. 75, 43 P.3d 266.

¶16 Wilson argues that our determination in *Bird*, that a defendant's absence from voir dire of the juror constitutes a structural error, controls our determination here. The trial court in *Bird* granted the State's motion to conduct in chambers individual voir dire of any potential juror who had personal experience with domestic violence. *Bird*, ¶ 12. Bird was absent from the voir dire questioning of a potential juror who made comments that suggested she would be biased against Bird. The potential juror explained that she worked as an emergency room nurse and often had to treat victims of domestic violence. *Bird*, ¶ 13.

¶17 The trial court denied a motion by Bird's counsel to remove this potential juror for cause. The court removed eight of the eleven potential jurors who were questioned in chambers. Bird's counsel used all of his peremptory challenges to remove other potential

6

jurors, rather than to remove the emergency room nurse whom he earlier had sought to remove for cause. *Bird*, ¶ 16. The emergency room nurse then became a member of Bird's jury. We determined that Bird's absence constituted a structural error. The emergency room nurse's inclusion as part of the jury affected the framework of Bird's trial and rendered the entire trial fundamentally unfair. *Bird*, ¶ 40.

¶18 Wilson argues that the sidebar conference included voir dire questioning of McCarthy. Wilson points to the transcript as proof that McCarthy attended the sidebar conference. The transcript reflects that Wilson's counsel requested a sidebar "with" McCarthy. The transcript's list of people who attended the sidebar conference omits any reference to McCarthy. The transcript simply states that "a sidebar is held with all attorneys and the Court in attendance." The record does not demonstrate that McCarthy was present at the sidebar conference. Further, the court's comment at the end of the sidebar conference, that "[w]e should have caught this ahead of time," implies that the topic of the sidebar conference dealt with previously available information, rather than information gathered from voir dire questioning of McCarthy. Nothing in the record or the court's comments after the sidebar indicates that either the court or the parties engaged McCarthy in any voir dire examination. The court then announced that McCarthy had been removed "[b]y stipulation" of the counsel, rather than having been removed for cause.

¶19 Nothing in the transcript indicates that Wilson missed any voir dire questioning of McCarthy. Additionally, McCarthy did not serve on Wilson's jury. Wilson could not have suffered, therefore, from the type of structural error that arose in *Bird* of having a potentially

7

biased juror serve as a member of his jury. *See Bird*, ¶ 40. *Bird* does not control our determination on whether Wilson's absence from the sidebar conference constituted a structural error. The State argues that no particular event took place at the sidebar conference that necessarily rendered the entire trial fundamentally unfair in a manner similar to a biased judge, lack of counsel, or a biased juror. *See Matt*, ¶¶ 31, 40. We agree. Wilson's absence from the sidebar conference does not rise to the level of structural error under these circumstances.

¶20 We now must consider whether the State has met its burden of persuasion of demonstrating that no reasonable probability exists that this constitutional violation caused prejudice to Wilson. *Charlie*, ¶ 45. The State argues that Wilson had no right to have a particular juror sit on his jury, only the right to a fair and impartial jury. *State v. Taylor*, 168 Mont. 142, 146, 542 P.2d 100, 102 (1975). The State further argues that no prejudice could have resulted to Wilson when the prosecutor and Wilson's counsel apparently agreed to stipulate to the removal of McCarthy from the group of potential jurors.

¶21 We have considered several times whether a defendant suffered prejudice by missing a conference that ultimately resulted in the removal of a juror. One of the jurors spoke with one of the prospective witnesses about the ongoing trial in *State v. Kennedy*, 2004 MT 53, ¶ 1, 320 Mont. 161, 85 P.3d 1279. The court met alone with the juror in chambers. Kennedy, Kennedy's counsel, and the prosecutor were not present. *Kennedy*, ¶ 10. The court met with counsel in chambers only after the court had spoken alone with the juror. Kennedy was not present at this second meeting.

8

¶22 The prosecutor moved to replace the juror with an alternate juror and to exclude the witness from testifying. The court granted the motions. *Kennedy*, ¶ 11. Kennedy claimed prejudice from the missed opportunity to question the juror about his interaction with the prospective witness. We determined that no prejudice to Kennedy resulted from his absence from this critical stage. The Court mooted any prejudice that Kennedy may have suffered when it removed the juror from the jury panel and the witness did not testify. *Kennedy*, ¶ 34.

¶23 We again considered in *Price* whether the defendant suffered prejudice by not attending a conference where the court had decided to remove a juror. One of the jurors informed the court during the trial that she recognized a prospective witness. *Price*, ¶ 35. The court conducted a conference with the juror, the prosecutor, and Price's counsel. Price was not present. The juror admitted at the conference that she would be less likely to believe the witness's testimony based on her personal knowledge of this prospective witness. *Price*, ¶¶ 35-36. The court granted the request by Price's counsel to remove the juror. The court's removal of the juror mooted any potential prejudice toward Price. *Price*, ¶ 38.

¶24 As previously noted, we lack a full transcript of the sidebar conference. We considered in *State v. Tapson*, 2001 MT 292, 307 Mont. 428, 41 P.3d 305, how to analyze prejudice when no record existed of the conversation that the defendant did not attend. The court in *Tapson* personally carried a substitute verdict form into the jury room. The prosecutor, Tapson's counsel, and Tapson were not present. No record existed of what occurred in the jury room, including whether the trial judge answered any questions for the jury. The lack of a record made it impossible to determine that the encounter caused no

9

prejudice to the defendant. *Tapson*, ¶ 31. We contrasted the absence of a record in *Tapson* in both *Price* and *Kennedy*, where a full record existed to describe what occurred while the defendant had been absent. *Kennedy*, ¶ 32; *Price*, ¶ 33.

¶25 We likewise have analyzed potential prejudice to the defendant where only a partial record of an omnibus hearing existed in *State v. Heavygun*, 2011 MT 111, 360 Mont. 413, 253 P.3d 897. Heavygun did not attend an omnibus hearing. No verbatim record of the hearing existed, but a memorandum set forth the topics that the court and counsel had addressed. *Heavygun*, ¶ 18. Heavygun could have suffered prejudice if his counsel had failed to raise an affirmative defense or potential objections at the hearing. Heavygun suffered no prejudice, however, as the memorandum reflected the fact that his counsel had raised an affirmative defense and had made motions on his behalf. *Heavygun*, ¶¶ 18-19. Heavygun later did not seek to make any motions or raise any defenses that were barred due to a failure by his counsel to have raised them at the hearing. *Heavygun*, ¶ 18. This Court determined that Heavygun had suffered no prejudice based on the partial record of the hearing. *Heavygun*, ¶ 19.

¶26 Although we lack a full transcript of the sidebar conference that Wilson did not attend, the record provides sufficient evidence as to the topic of the conference: the alleged bias of potential juror McCarthy. Wilson's counsel requested the sidebar conference directly after McCarthy had been called for voir dire. The court announced at the conclusion of the sidebar conference that McCarthy had been dismissed by stipulation.

¶27 Wilson argues that he suffered prejudice due to his inability to have taken part in the discussion regarding whether to stipulate to the removal of McCarthy. This situation differs greatly from *Tapson* where the court interacted directly with the jury without the defendant or defendant's counsel present, and without a record. The court in *Tapson* potentially could have influenced the jury through comments that it made during this unrecorded encounter with the jury. The lack of a record prevented this Court from determining that no possibility of prejudice existed. *Tapson*, ¶ 31. Here the record sufficiently demonstrates the nature of the potential prejudice to Wilson. *See Heavygun*, ¶ 18. Wilson missed the opportunity to participate in the decision of whether to remove potential juror McCarthy from the jury pool.

¶28 Though he was not present when that discussion occurred, Wilson possesses no right to have any particular juror, including McCarthy, sit as a member of the jury. *Taylor*, 168 Mont. at 146, 542 P.2d at 102. The prosecutor and defense counsel both have the opportunity to use peremptory challenges to remove jurors without cause. *Armstrong v. Gondeiro*, 2000 MT 326, ¶ 20, 303 Mont. 37, 15 P.3d 386; M. R. Civ. P. 47(b). Either Wilson's counsel or the prosecutor could have removed McCarthy with a peremptory challenge. This Court determined that no prejudice arose when the court removed empanelled jurors in *Kennedy* and *Price*. A greater potential for prejudice exists when a court removes a juror who has sat through a portion of the trial than when a court removes a potential juror before trial. *See State v. Pease*, 222 Mont. 455, 470, 724 P.2d 153, 162 (1986) (describing defendant's concern that the alternate juror had not been paying attention during the trial).

11

¶29    Wilson possesses a right to an impartial jury. *Taylor*, 168 Mont. at 146, 542 P.2d at 102. Wilson has not alleged that any member of the jury demonstrated any bias against him. Further, the court's removal of potential juror McCarthy in no way limited Wilson's ability to raise challenges for cause or to remove potential jurors with peremptory strikes. Wilson's claim of prejudice likely would resonate more strongly if the court instead had insisted at the sidebar conference that McCarthy remain in the pool of potential jurors. This scenario likely would have forced Wilson later to exercise a peremptory strike to remove McCarthy. The court removed McCarthy, however, and Wilson retained his full complement of peremptory strikes to remove other potential jurors. McCarthy's removal did not affect Wilson's right to a fair and unbiased jury. *See Taylor*, 168 Mont. at 146, 542 P.2d at 102.

¶30    The record sufficiently establishes that the only potential prejudice to Wilson arose from his loss of an opportunity to participate in the decision of whether to keep McCarthy in the potential jury pool. Similar to *Kennedy* and *Price*, however, the court mooted this potential prejudice when it announced that McCarthy had been removed from the potential jury pool by stipulation. *See Kennedy*, ¶ 34; *Price*, ¶ 38.

¶31    Affirmed.

                                                        /S/ BRIAN MORRIS

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JIM RICE