THE STATE OF MONTANA, Plaintiff and Respondent, v. FRANKLIN NORMAN SCHENK, Defendant and Appellant.

No. 11351.
Submitted June 7, 1968. Decided Aug. 19, 1968.
Rehearing Denied Aug. 29, 1968.
444 P.2d 861.

494

John F. Bayuk, Shelby, David O. DeGrandpre, argued, Helena, for appellant.

Forrest H. Anderson, Atty. Gen., William A. McCormick, Asst. Atty. Gen., Helena, Rae V. Kalbfleisch, Shelby, Robert Emmons, Great Falls, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

Franklin Norman Schenk was charged with the crime of murder in the first degree in the district court of Toole County, and upon jury trial he was found guilty of murder in the second degree. The appellant, Mr. Schenk, was charged in connection with the gunshot death of his wife, Betty Bogdanski Schenk, and he appeals from that conviction and from a denial of his motion for a new trial, alleging a number of specifications of error.

From the record it appears that on the afternoon of November 24, 1966, Franklin and Betty Schenk and Mrs. Schenk's three children by a previous marriage ate the traditional Thanksgiving dinner with Melvin and Josephine McCann, neighbors of the Schenks'. Melvin McCann testified that liquor was present and consumed before and during dinner, the amount being two six packs of beer and a half gallon and a fifth of red currant wine. It appears from the testimony

of Mr. McCann that the major portion of that liquor was consumed by Mr. and Mrs. McCann and Mr. Schenk; Mr. McCann testified that Betty Schenk drank "just a half a bottle of beer and a sip of wine."

After dinner Betty Schenk returned to the Schenk residence, appellant and the McCanns proceeded downtown where the appellant continued to drink beer at two bars from approximately 7:00 p. m. until the appellant returned home sometime after 11:00 p. m. Witnesses testified they saw and talked to the appellant downtown between 11:00 and 11:30 p. m.

Mrs. Schenk and her three children retired for the night after her oldest son returned home from the movie. The three children testified they were awakened by loud noises which Christine Bogdanski identified as shots. Two of the Bogdanski children testified to hearing four shots and talking between the shots, but no talking after the last shot. All three children testified to seeing the appellant enter their bedroom and telling them to get a doctor because their mother had been hurt.

Donald Bogdanski also testified to seeing the appellant get the rifle from behind the refrigerator where it was kept. Paul and Christine Bogdanski also testified to seeing the appellant throw the rifle across the kitchen.

Dr. Richard Beighle testified he arrived at the Schenk residence at approximately 12:30 a. m. and found the appellant on the bed next to Mrs. Schenk; that he examined Mrs. Schenk and ascertained that she was dead and had been dead from one to twenty minutes.

Dr. John Pfaff, Jr., testified death was caused by severance of the spinal cord due to a gunshot wound in the side of the neck. He also testified that Mrs. Schenk had received a beating on the night of November 24, 1966.

Sheriff Burke questioned the appellant at the Schenk residence and also gave him the Miranda warnings. Schenk was then taken to the Toole County jail and booked. The follow-

ing day the Toole county attorney visited the appellant in his cell stating to the appellant that he, the county attorney, wanted to talk to him in connection with the shooting incident of Mrs. Schenk. The county attorney then gave the appellant the Miranda warnings which the appellant said he understood. The appellant then indicated he was willing to make a statement and said he didn't think he needed an attorney at that time.

The appellant gave the county attorney an oral statement and about one half hour later the appellant was taken into the interrogation room so that the county attorney's secretary could take a written statement. Before starting the interrogation, the county attorney again advised the appellant of his rights; the appellant answered that he understood and that he did not want an attorney.

Upon this appeal appellant first contends that it was error for the trial court to deny discovery of evidence in the hands of the prosecution. This Court can find no merit in such contention. Under the common law there is no right to have inspection of evidence in the hands of the prosecution. The King v. Holland, 4 Durn. and East 691, 100 Eng.Rep. 1248 (1792). Also in Montana at the time of trial of this case the same rule prevailed for there was no constitutional provision or specific statute authorizing provision. State ex rel. Keast v. District Court, 135 Mont. 545, 342 P.2d 1071 (1959). Compare Pinana v. State of Nevada, 76 Nev. 274, 352 P.2d 824 (1960), wherein it was held that in the absence of statute allowance of inspection rests within the discretion of the trial court upon a showing of proper cause. Nothing in the affidavit of the appellant's attorney shows a proper cause for allowing discovery. The affidavit alleges no more than that there "is good cause for discovery." Note also People v. Wilkins, 135 Cal.App.2d 371, 287 P.2d 555 (1955), in which it was held that the materiality of the records in question must be shown in order to have discovery. The trial judge before whom

the situation could most easily be presented was better able to determine what was proper, and there is nothing in the record to support appellant's contention that the denial of inspection prevented him from having a fair trial.

The appellant also contends that he was denied due process of law by the failure of the court to timely appoint defense counsel. The record shows that Mr. John Bayuk, who was eventually appointed to represent the appellant, fully expected to be appointed counsel. Mr. Bayuk informed the county attorney the appellant was his client in a civil action and that he, Mr. Bayuk, was going to represent him. Mr. Bayuk also saw and talked to the appellant on a number of occasions prior to his formal appointment as counsel. The record also shows that at the arraignment on December 29, 1966, the appellant, upon being asked by the court, whether he was represented by counsel, replied "yes", and further replied "yes" when asked whether Mr. Bayuk had been retained by appellant as counsel. Later, on January 3, 1967, the court ascertained that the appellant was indigent and formally appointed Mr. Bayuk and Mr. David DeGrandpre as counsel to represent the appellant.

■ A defendant in a criminal proceeding is entitled to counsel at every critical stage of the proceedings [United States ex rel. Russo v. State of New Jersey, 351 F.2d 429 (3 Cir. 1965) ; Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964)] "where rights may be preserved or lost, regardless of whether prejudice is shown." People v. Sykes, 23 A.D.2d 701, 258 N.Y.S.2d 275 (1965). Compare White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) and Commonwealth ex rel. Mullenaux v. Myers, 421 Pa. 61, 217 A.2d 730 (1966).

■ That appellant was represented by counsel at every critical stage of the proceeding is clearly shown in the record. It is true he was not represented by appointed counsel, but the right is one to be represented, not a right to be represented by

appointed counsel. Mr. Bayuk saw and talked to the appellant within a week of appellant's arrest and also talked to him a number of times before the filing of the information or the arraignment. Mr. Bayuk also had his secretary secure a copy of the justice court complaint charging the appellant, and she secured it within two days following the day it was filed. From Mr. Bayuk's actions it is clear to this Court that he was representing the appellant, and was representing him prior to court appointment. As stated previously, the appellant admitted to the court at the arraignment that he himself had employed Mr. Bayuk to represent him.

The appellant also asserts that he did not intelligently waive his right to counsel at the time he gave his statement. "The accused may, of course, intelligently and knowingly waive his privilege against self-incrimination and his right to counsel either at a pretrial stage or at the trial." Escobedo v. State of Illinois, supra, 378 U.S. p. 490, n. 14, 84 S.Ct. p. 1765. Whether there has been an intelligent and knowing waiver depends upon the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused. In re Woods, 64 Cal.2d 3, 48 Cal.Rptr. 689, 409 P.2d 913 (1966); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

From the record it is clear that appellant was warned a number of times of his right to remain silent and of his right to counsel; Sheriff Burke warned him of his rights at the scene of the shooting; the county attorney warned him of his rights the following day when he told appellant he would like to speak to him about the shooting incident; and the county attorney again warned the appellant of his rights at the taking of the written statement. The appellant's waiver of his right to counsel during the questioning by the county attorney is shown in the written statement itself; the written statement containing such waiver was made in the presence of the county attorney, Sheriff Burke and the county attor-

ney's secretary. We can find no merit in appellant's contention that he did not intelligently waive his right to counsel.

█ Appellant's counsel raises a point obliquely in his brief concerning the use of the defendant's signed statement during the trial to which no proper or timely objections were ever made. We use the word "obliquely" raised because counsel refers to an affidavit of one juror filed in this Court months after the trial and such alleged error is so far removed from the rules of practice and rules on appeal of this or any other appellate court that we need not dwell upon the matter. Even at the time of the hearing on the motion for new trial counsel informed the district court that he was basing the motion on the record and the point here attempted to be raised was not then in the record. No error was committed.

The appellant further contends that it was error to have in chambers voir dire of three prospective jurors when he was not present in chambers. The standard that must be followed is that a defendant must be present when his presence "* * * bears, or may fairly be assumed to bear, a relation, reasonably substantial, to his opportunity to defend. Nowhere in the decisions of this court is there a dictum, and still less a ruling, that the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a shadow. * * *

"So far as the Fourteenth Amendment is concerned, the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, pp. 106-108, 54 S.Ct. 330, 333, 78 L.Ed. 674 (1934).

█ Appellant's counsel left the appellant in the courtroom after requesting the court to hear the voir dire of the three prospective jurors in chambers. Eventually the three jurors were disqualified, so the question of appellant's being present was rendered moot.

■ We have previously considered somewhat similar situations in State v. Peters, 146 Mont. 188, 405 P.2d 642, and we there observed that a defendant's rights are violated only if he is prevented from being personally present when the jury is hearing his case, or is prevented from attending other proceedings where his presence is essential to a fair and just determination of a substantial issue. Since neither situation exists here we find no merit in appellant's contention.

Upon review of the other specifications of error raised by the appellant we find them to be without merit.

The judgment is affirmed.

MR. JUSTICES HASWELL, ADAIR, CASTLES and JOHN CONWAY HARRISON, concur.