# FILED

March 3 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA



DA 06-0064

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 60

STATE OF MONTANA,

       Plainiff and Appellee,

   v.

TRACEY R. GODFREY,

       Defendant and Appellant.

APPEAL FROM:   District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 99-114
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          James B. Wheelis, Chief Appellate Defender; David Avery, Assistant
Appellate Defender; Helena, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General; C. Mark Fowler,
Assistant Attorney General; Helena, Montana

          George Corn, Ravalli County Attorney; T. Geoffrey Mahar, Chief Deputy
County Attorney; Hamilton, Montana

              Submitted on Briefs:  August 9, 2007

                      Decided:  March 3, 2009

Filed:

_____

                        Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Tracey Raymond Godfrey (Godfrey) appeals from the judgment of the Twenty-First Judicial District Court, Ravalli County, dismissing his petition for post-conviction relief. We affirm.

¶2 We consider the following issues on appeal:

¶3 1. Did the District Court err in dismissing Godfrey's claim that he was denied the right to confront the victim about her alleged recantation as a result of ineffective assistance of counsel and prosecutor error?

¶4 2. Did the District Court err in dismissing Godfrey's ineffective assistance of counsel claim regarding his trial counsel's failure to object to questions about his pre-trial silence?

¶5 3. Did the District Court err in dismissing Godfrey's claim that he was denied a fair trial because he was not present during conferences when counsel and the court discussed inquiries from the jury during deliberations?

¶6 4. Was Godfrey's appellate counsel ineffective because he failed to challenge Godfrey's conviction on the ground that the jury did not meaningfully pay attention to the parties' presentation of evidence?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶7 Following a jury trial, held April 24-25, 2000, Godfrey was convicted of one count of sexual assault. The jury determined that Godfrey had sexually assaulted his eight year old niece, K.M., during a visit to Godfrey's residence in October of 1999. At trial, K.M.

2

testified about the October incident, stating that she fell asleep on Godfrey's couch and when she woke up in the middle of the night she felt his "private" against her bottom, and that it felt "like it was sticking to [her] bottom." As a result of his conviction, the District Court sentenced Godfrey to thirty years in prison. The District Court determined that Godfrey was a persistent felony offender and imposed an additional ten-year sentence to run consecutively. Godfrey appealed and we affirmed his conviction. *State v. Godfrey*, 2004 MT 197, 322 Mont. 254, 95 P.3d 166. The Sentence Review Division amended Godfrey's sentence to a sixty-year prison term, with thirty years suspended.

¶8 Godfrey filed a pro se post-conviction petition, asserting five grounds for relief: (1) his Fourteenth Amendment right to due process was violated by the prosecutor's failure to disclose exculpatory evidence; (2) his Sixth Amendment right to confront witnesses was violated by his trial counsel's ineffective assistance of counsel; (3) his right to be present at every stage of his trial was denied; (4) his Sixth Amendment right to counsel was violated because his trial counsel rendered ineffective assistance of counsel; and (5) he was denied counsel at his re-sentencing hearing, in violation of his right to counsel. Godfrey also submitted four motions: a motion for production, motion for an evidentiary hearing, motion for new trial, and a request for counsel. The District Court dismissed Godfrey's petition for post-conviction relief and denied all motions. Godfrey appeals.

¶9 Additional facts will be discussed as needed.

**STANDARD OF REVIEW**

¶10 We review a district court's denial of a petition for post-conviction relief to determine if the court's findings of fact are clearly erroneous and whether the conclusions of law are correct. *State v. Morgan*, 2003 MT 193, ¶ 7, 316 Mont. 509, 74 P.3d 1047. Ineffective assistance of counsel claims are mixed questions of law and fact which we review de novo. *Morgan*, ¶ 7. However, discretionary rulings in the post-conviction relief setting, such as whether to hold an evidentiary hearing, are reviewed for an abuse of discretion. *Morgan*, ¶ 7. Whether a criminal defendant's right to be present at critical stages of his trial was violated is a question of constitutional law, for which our review is plenary. *State v. Mann*, 2006 MT 160, ¶ 10, 332 Mont. 476, 139 P.3d 159.

**DISCUSSION**

¶11 **1. Did the District Court err in dismissing Godfrey's claim that he was denied the right to confront the victim about her alleged recantation as a result of ineffective assistance of counsel and prosecutor error?**

¶12 Godfrey alleges that he was unconstitutionally denied his Sixth Amendment right to meaningfully confront his accusers because his counsel failed to cross-examine K.M. about her alleged recantation during a pre-trial interview and, thus, his trial counsel, Mark McLaverty (McLaverty), was ineffective. Alternatively, Godfrey argues that prosecutor Geoffrey Mahar (Mahar) withheld this exculpatory evidence and failed to meet his duty as an officer of the court when he stated during closing argument that K.M. was "unshakable" in her allegation of sexual abuse. The State responds that Godfrey failed to

4

provide evidence in support of the allegations of his petition, and the District Court properly dismissed his claim.

¶13 A petitioner in post-conviction relief proceedings has the burden to "show by a preponderance of evidence that the facts justify relief." *State v. Peck*, 263 Mont. 1, 3, 865 P.2d 304, 305 (1993). When seeking post-conviction relief, a defendant must "identify all facts supporting the grounds for relief set forth in the petition and have attached affidavits, records, or other evidence establishing the existence of those facts." Section 46-21-104(1)(c); *State v. Wright*, 2001 MT 282, ¶ 31, 307 Mont. 349, 42 P.3d 753. Mere conclusory allegations are not enough to support the petition. *Wright*, ¶ 31. A defendant's affidavit, unsupported by evidence, is also insufficient to support a petition for post-conviction relief. *Williams v. State*, 2002 MT 189, ¶ 19, 311 Mont. 108, 53 P.3d 864.

¶14 We use the two-prong test defined in *Strickland v. Washington* to review claims of ineffective assistance of counsel. 466 U.S. 668, 104 S. Ct. 2052 (1984). Pursuant thereto, the defendant must show that "counsel's performance fell short of the range of competence required of attorneys in criminal cases and that his counsel's deficient performance was prejudicial to his case." *State v. Hendricks*, 2003 MT 223, ¶ 6, 317 Mont. 177, 75 P.3d 1268. With respect to the first prong, we have repeatedly stated that the defendant must overcome the "strong presumption" that trial counsel's actions constituted trial strategy and were within the broad scope of reasonable professional conduct. *Hendricks*, ¶ 7. Under the second prong, the defendant bears the burden of

5

establishing prejudice through a demonstration that, but for counsel's errors, there is a reasonable probability that the result would have been different. *State v. Turnsplenty*, 2003 MT 159, ¶ 14, 316 Mont. 275, 70 P.3d 1234.

¶15 Godfrey's petition alleges that on April 14, 2000, prior to trial and at the request of defense counsel, K.M. was interviewed by McLaverty, Mahar, and private defense investigator Jeff Patterson (Patterson). Godfrey contends that following the interview, McLaverty and Patterson told him that K.M., when asked if she was mistaken about what happened in October, 1999, stated "I probably am wrong." Godfrey claims that McLaverty's failure to question K.M. at trial about her alleged recantation indicates that McLaverty was ineffective. Godfrey further alleges that McLaverty and Mahar conspired to suppress the exculpatory evidence.

¶16 However, before the question of whether counsel's actions were ineffective or constituted prosecutorial misconduct can be determined, Godfrey must establish the predicate facts by a preponderance of evidence. In support of his contentions, Godfrey offered the District Court three pieces of evidence: (1) a motion for payment of private investigator fees; (2) notes from a telephone conversation between Patterson and a paralegal to Godfrey's appellate counsel; and (3) his own sworn affidavit recounting McLaverty's and Patterson's comments to him regarding the alleged repudiation. While the telephone conversation notes support the interview's occurrence, they do not provide evidence of K.M.'s alleged recantation. Incidentally, the telephone notes reveal that Patterson did not take any handwritten notes at the interview, but used a tape recorder

6

which later proved faulty. Thus, the only evidence of the alleged recantation is found in Godfrey's affidavit. As the District Court noted, Godfrey did not attach affidavits from either McLaverty or Patterson, his defense team, who could have corroborated his affidavit. Thus, Godrey's petition fails to point to any evidence that would support his assertion that K.M. recanted.

¶17 As noted above, conclusory allegations in the defendant's own affidavit are not enough to support a petition for post-conviction relief. *See Williams*, ¶ 19; *Wright*, ¶ 31. In the absence of other affidavits, records, or evidence from which the substance of his allegations could be supported, we cannot disagree with the District Court's assessment that Godfrey failed to meet his burden of proof for establishing the existence of a claim pursuant to § 46-21-104(1)(c), MCA. Accordingly, we conclude that the District Court properly dismissed Godfrey's claim.

¶18 **2. Did the District Court err in dismissing Godfrey's ineffective assistance of counsel claim regarding his trial counsel's failure to object to questions about his pre-trial silence?**

¶19 Godfrey alleges that he suffered ineffective assistance of counsel because McLaverty failed to object to the prosecutor's comments regarding his pre-trial silence. In support of this claim, Godfrey relies on our decision in his direct appeal. However, Godfrey mischaracterizes our holding.

¶20 On direct appeal, Godfrey asserted that the prosecutor's conduct deprived him of his constitutional right to due process. *Godfrey*, ¶ 2. The appeal stemmed from two instances of alleged prosecutorial conduct, for which no objection was made. *Godfrey*,

7

¶¶ 18-19.  The first occurred during Godfrey's cross examination, in which the prosecutor insinuated that Godfrey had enough time to fabricate an explanation for K.M.'s testimony, and the second occurred during closing argument in which the prosecutor again implied that Godfrey's story was fabricated.  *Godfrey*, ¶¶ 18-19.  Godfrey argued that the prosecutor's conduct in both instances amounted to impermissible comments on his constitutional right to remain silent, and urged us to invoke the common law doctrine of plain error.  *Godfrey*, ¶¶ 23-24.  However, we affirmed Godfrey's conviction and concluded that plain error review was unwarranted because no plain error existed, stating that, while the "prosecutor's cross examination questions were inadvisable[,] . . . they were more a comment on Godfrey's *story* than on his *silence*."  *Godfrey*, ¶ 37 (emphasis in original).  Consequently, we held that there was "no clear comment on or infringement of Godfrey's fundamental right to remain silent."  *Godfrey*, ¶ 40.

¶21    In reliance on our opinion in *Godfrey*, Godfrey asserts that this "Court's assessment of the comment implies that the conviction would have been reversed if counsel had objected to preserve [the] error."  However, this statement conflicts with our conclusion in *Godfrey* that "no clear comment on or infringement of Godfrey's fundamental right to remain silent" occurred.  *Godfrey*, ¶ 40.  Therefore, we cannot now conclude that Godfrey's trial counsel erred by not objecting to questions that did not warrant an objection.  Accordingly, this claim is without merit and the District Court correctly dismissed it.

**¶22    3.  Did the District Court err in dismissing Godfrey's claim that he was denied a fair trial because he was not present during conferences when counsel and the court discussed inquiries from the jury during deliberations?**

¶23    Godfrey contends that he was deprived of his constitutional right, under the Sixth Amendment of the U.S. Constitution and Article II, Section 24 of the Montana Constitution, to be present at all criminal proceedings when the court discussed jury inquiries with counsel in-chambers and outside Godfrey's presence.[1]   Godfrey was detained in jail during the trial, and was not brought to the courtroom to attend the six meetings in chambers to discuss the questions sent by the jury during deliberations.

¶24    The Sixth Amendment's Confrontation Clause provides a criminal defendant with the right to be present at all criminal proceedings against him.  *Mann*, ¶ 12 (citing *Illinois v. Allen*, 397 U.S. 337, 338, 90 S. Ct. 1057, 1058 (1970)); *State v. Matt*, 2008 MT 444, ¶ 16, 347 Mont. 530, 199 P.3d 244.  Similarly, the Montana Constitution includes express language protecting the accused's right to "appear and defend in person and by counsel" in all criminal prosecutions.  Mont. Const. art. II, § 24; *Mann*, ¶ 12; *see also Matt* ¶ 17. We have explained that this right provides that "'the defendant must be present throughout the entire trial.'"  *Mann*, ¶ 13 (quoting *State v. Reed*, 65 Mont. 51, 56, 210 P. 756, 757 (1922)).  Specifically, the defendant has the right to be present "'when the jury [is] hearing his case, and at all times during the proceeding of the trial, when anything is

---

[1]  Because the State did not argue in the District Court that this claim is barred under § 46-21-105(2), MCA, for Godfrey's failure to raise it on direct appeal, that potential statutory violation is deemed to be waived pursuant to *State v. Johnston*, 2008 MT 318, ¶ 21, 346 Mont. 93, 193 P. 3d 925.

done which in any manner affects his right . . . .'" *Mann*, ¶ 13 (quoting *Reed*, 65 Mont. at 58, 210 P. at 758).

¶25 When analyzing whether the right has been violated, we generally first consider whether the defendant was excluded from a "critical stage" of the proceeding. *Mann*, ¶ 15; *Matt*, ¶ 18. We have then considered "the effect the violation has on the defendant to determine whether the defendant suffered any conceivable prejudice." *Mann*, ¶ 15. Where the circumstances present a situation where prejudice did not arise, we have affirmed. *See State v. Kennedy*, 2004 MT 53, ¶¶ 27, 34, 320 Mont. 161, 85 P.3d 1279 (determining that Kennedy was excluded from a critical stage of his trial when the court conducted a private conversation with a juror, but holding that no prejudice occurred). In *State v. Riggs*, 2005 MT 124, 327 Mont. 196, 113 P.3d 281, we determined that the district court's discussions with two jurors, outside the presence of the defendant was not prejudicial to the defendant's case, but were little more than "brief interludes in a complex trial" and the "defendant had no role to play at either." *Riggs*, ¶ 54 (citing *U. S. v. Gagnon*, 470 U.S. 522, 105 S. Ct. 1482 (1985).

¶26 Recently, in *Matt*, we addressed the issue of prejudice within a harmless error analysis which considered whether the error was a structural or trial error. *Matt*, ¶ 38. Because we conclude that Godfrey was not prejudiced by his absence from the in-chambers meetings, we do not take up the initial question of whether those meetings were a "critical stage" of the trial. Rather, for purposes of our analysis, we assume, *arguendo*, that they constituted a critical stage.

10

¶27 The court and counsel met six times to discuss ten of eleven[2] jury inquiries sent to the court during deliberations. The jury questions primarily requested small segments of trial testimony. Upon receipt of these questions, an in-chambers meeting took place whereby the court and counsel discussed the proposed response to the jury's request. At the conclusion of each meeting, the court responded by providing a "special instruction" to the jury. The court issued seven special instructions in response to the jury questions. Four of the seven responses, as discussed below, provided the relevant transcript the jury had requested.

¶28 The jury first requested that the court provide a videotape of K.M.'s interview with the police. The court did not contact counsel about this question, simply advising the jury that "[n]either party offered that video tape into evidence and therefore I cannot allow you to see any such video."

¶29 In response to jury questions two through five, counsel met with the court for each question and discussed the court's responses. In all four of these questions the jury requested portions of the trial transcript. In response to question two, the court provided very short segments, about 6-7 lines each, of K.H. and Godfrey's testimony. In response to questions three, four, and five, the court refused to provide the requested transcript, informing the jury that it "should not give any undue emphasis to the testimony of any one witness to the exclusion of all others" and "it is very difficult and time consuming for the court reporter to review her notes for all relevant testimony to address these

---

[2] The court refused the jury's first request without consulting with counsel.

questions, consult with counsel, prepare it, and submit it to [you] piece by piece during deliberations." The court thus instructed the jury to "rely on your memories and notes of testimony to deal with these issues."

¶30 Questions six through eleven were answered by three instructions, separated by an interval of time when the trial was recessed for the night. McLaverty, Godfrey's counsel, objected to the form of the court's instruction in response to question six, believing the jury was asking two questions, not just one. The court replied that it believed it was answering the specific question the jury had asked, but added ". . . if in fact there is a different question, I've invited them to submit a further written question to the Court." Each of the three instructions provided segments of the trial transcript, with the final instruction again advising the jury to rely on memory and notes "to resolve further disputed issues of fact . . . ."

¶31 After the last question, McLaverty moved for a mistrial on the ground that "it's clear . . . from the questions from the jury and the transcripts that we've had to supply, that they were not, for whatever reason, paying attention to what was going on in the courtroom while the trial was proceeding" and could not therefore, be "considered true triers of fact . . . ." The District Court, explaining that "I did tell them at a particular point, that if they wanted a partial transcript, they had the right to ask for it,"[3] denied the motion. The court offered its observation that the jury appeared to be paying attention to the testimony, but stated that the court would not entertain any further requests and, if the

_____

[3] The District Court's offer of transcript excerpts to the jury is not challenged on appeal.

jury was still in deliberations by 4:00 p.m., the court "may well be inclined to grant a mistrial." The jury later returned with a verdict.

¶32 In concluding that the error in *Matt* was a trial error, and not a structural error, the Court first described the content of the conference at issue:

> The court overruled defense counsel's objection to testimony by a police detective, granted defense counsel's request to call a probation officer to impeach witness Nimocks's credibility, denied defense counsel's request to introduce into evidence the note allegedly written by Oldhorn to Matt while in jail, and denied defense counsel's motion to dismiss for insufficient evidence.

*Matt*, ¶ 43. From this assessment the Court concluded that "[n]othing discussed at the conference and ruled on by the District Court concerned or affected the framework within which Matt's trial proceeded or necessarily rendered the trial fundamentally unfair . . . . None of these issues and rulings contaminated the trial mechanism along the lines that a biased judge, lack of counsel, an erroneous reasonable-doubt instruction, or a jury-selection error would." *Matt*, ¶ 43. Here, the issuing of responses to jury questions, including the provision of several short transcript portions, could not have affected "the framework" of the trial or rendered the trial "fundamentally unfair" any more than the rulings at issue in *Matt* could have. The issues in *Matt* concerned requests to present, or objections to, witnesses or other evidence directly to the jury in case-in-chief or rebuttal, and a motion to dismiss for insufficient evidence. We thus conclude that, as in *Matt*, any error here necessarily constituted trial error.

¶33 The Court held in *Matt* that prejudice to the defendant is presumed by such trial error, and that "the State has the burden to rebut the presumption by demonstrating there

13

is no reasonable possibility the violation prejudiced the defendant in light of the interests the right of presence was designed to protect." *Matt*, ¶ 38. Citing *Kennedy*, we explained that this right included the opportunity for the defendant to "participate in the preservation of his or her rights." *Matt*, ¶ 21. We noted that a defendant can observe whether his attorney is advocating for him zealously and professionally, and can observe the demeanor of the trial judge and prosecutor as they address rulings on trial issues, and thus be in a position to provide information or to make informed decisions about whether to change his plea or pursue an ineffective assistance of counsel claim. *Matt*, ¶ 21. With this backdrop, we consider whether the State has met its burden.

¶34 The State argues that there is no prejudice stemming from Godfrey's absence. First, it notes that, unlike *State v. Tapson*, 2001 MT 292, 307 Mont. 428, 41 P.3d 305, the communications between the court and the jury in response to the jury's questions are all documented, and reversal is not warranted by lack of a record.[4] The State also distinguishes *State v. Bird*, 2001 MT 2, 308 Mont. 75, 43 P.3d 266, offering that, unlike the exclusion from the in-chambers voir dire process in that case, here "nothing transpired that affected the conduct of the trial . . . . The State's case-in-chief, the defense's case, the arguments, and the instruction of the jury had all taken place." The State argues that the interactions between the judge and jury at issue here were "nonverbal" and, referencing our rational in *Riggs*, describes the interactions as "brief

---

[4] Minute entries document the receipt of jury questions, the convening of the meetings and the issuance of the court's instructions. The jury's questions and the court's written instructions in response are included in the record. The discussions held when McLaverty objected to the court's response to question six and later moved for mistrial were transcribed.

14

interludes in a complex trial." In *Riggs*, we also cited with approval *United States v. Gagnon*, 470 U.S. 522, 105 S. Ct. 1482. *Riggs*, ¶ 52. There, the United States Supreme Court held that an in-chambers discussion with a juror together with defense counsel but outside the presence of the defendant did not deprive the defendant of his constitutional right. *Gagnon*, 470 U.S. at 526, 105 S. Ct. at 1484. The Court reasoned that the "presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Gagnon*, 470 U.S. at 526, 105 S. Ct. at 1484 (citing *Snyder v. Mass.*, 291 U.S. 97, 105-06, 54 S. Ct. 330, 332, 333 (1934)). We agreed with this rationale in *Riggs*, saying that "a defendant has a due process right to be present at a given proceeding whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Riggs*, ¶ 52.

¶35 The District Court provided small portions of the transcript in response to a number of questions, as it had previously promised the jury it would do but, in doing so, reminded the jury of its duty to consider the evidence in its entirety, to rely on notes taken at trial, and not to overemphasize any one part of the testimony. This was consistent with the court's original charge to the jury. The court's responses to the jury were largely routine, formulated in consultation with counsel and without objection. McLaverty objected to one response because he believed the entirety of the question had not been answered, and in response the court stated it would entertain a follow-up question from the jury if the answer was not sufficient. After the jury's eleventh question, Godfrey's

15

counsel moved for a mistrial on the unique ground that the number of questions from the jurors was an indication they were not acting as "true triers of fact."

¶36 The conferences in question all took place after the case had been submitted to the jury. Therefore, the trial had proceeded beyond the point at which the court's actions should have a bearing upon the evidence the jury would hear or the instructions the court would give. At this point, with the jury in deliberations, the information the court could lawfully share with the jury in response to their inquiries was limited to that which the jury had already heard, and any potential prejudice to the defendant by virtue of evidentiary rulings had already occurred. Most significantly, the court here did no more than release to the jury limited transcript excerpts, all the while instructing the jury that it must consider the evidence in its entirety.

¶37 In *Kennedy*, after concluding Kennedy's right to be present for all critical stages of the proceeding had been violated, we examined the particular circumstances and concluded that Kennedy had not been prejudiced by his exclusion from the District Court's conversation with a juror. *Kennedy*, ¶ 34. Similarly, here, based upon the record of these proceedings relative to the jurors' questions and the District Court's responses, we conclude that the State has demonstrated there is no reasonable possibility that Godfrey's exclusion from these proceedings prejudiced him in light of the interests his presence was designed to protect. In another case and under other circumstances, a potential for prejudice could well be demonstrated in the context of jury deliberations.

16

¶38 We affirm the District Court's denial of Godfrey's claim that he was prejudiced by a denial of his fundamental constitutional right to be present at all proceedings.

¶39 **4. Was Godfrey's appellate counsel ineffective because he failed to challenge Godfrey's conviction on the ground that the jury did not meaningfully pay attention to the parties' presentation of evidence?**

¶40 Godfrey's last claim is that his appellate counsel was ineffective because he did not argue on direct appeal that Godfrey was denied a fair trial. Godfrey argues that the numerous inquires sent by the jury to the court during its deliberations is evidence of an unfair trial because "the jury essentially waited until deliberations to focus on those issues that it deemed in hindsight to be most important . . . ."

¶41 This Court considers issues presented for the first time to be untimely and will not consider them on appeal. *State v. Ferguson*, 2005 MT 343, ¶ 38, 330 Mont. 103, 126 P.3d 463. This includes new arguments and changes in legal theory. *Ferguson*, ¶ 38. "[I]t is fundamentally unfair to fault the trial court for failing to rule on an issue it was never given the opportunity to consider." *State v. Adgerson*, 2003 MT 284, ¶ 12, 318 Mont. 22, 78 P.3d 850.

¶42 Godfrey's petition asserted five grounds for post-conviction relief but did not include a claim for ineffective assistance of appellate counsel. Consequently, we agree with the State that Godfrey raises the issue of ineffective assistance of appellate counsel for the first time on appeal. Accordingly, Godfrey waived the issue for appeal and we refuse to reach the merits of Godfrey's claim.

¶43 Affirmed.

17

/S/ JIM RICE


We concur:


/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS