FILED

September 8 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0050

DA 14-0050

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 267

STATE OF MONTANA,

      Plaintiff and Appellee,

    v.

PETER NORTHCUTT,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and For the County of Carbon, Cause No. DC 11-36
Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender, Gregory Hood, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General; Helena, Montana

          Alex R. Nixon, Carbon County Attorney, Red Lodge, Montana

Submitted on Briefs: July 22, 2015

Decided: September 8 2015

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     A Carbon County jury convicted Peter Northcutt of three counts of assault on a peace officer. Northcutt moved for a new trial based on improper contact between the judge and the jury while the jury was deliberating. The Twenty-Second Judicial District Court denied the motion and Northcutt appeals. We examine whether the judge committed reversible error by asking the jury about the status of its deliberations without Northcutt and the public present. We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2     The State charged Northcutt with three counts of assault on a peace officer under § 45-5-210, MCA, and one count of aggravated animal cruelty under § 45-8-217, MCA. Northcutt's jury trial commenced on April 8, 2013. On the third day of trial, after the presentation of all evidence and argument, the jury began deliberations at approximately 4:30 in the afternoon. At around 5:30 p.m., the jury sent a note to the court asking to see one of the demonstrative exhibits, which the court and the parties agreed to supply. The jury sent a second note sometime around 7:30 p.m. asking for a copy of the transcript from the trial, which the court answered with a note stating that it could not oblige the request. At approximately 8:30 that night, the jury reached a verdict, finding Northcutt guilty of all three counts of assault on a peace officer and not guilty of aggravated animal cruelty.

¶3     At some point between when the jury asked its first written question and when it reached its verdict, presiding District Judge Loren Tucker approached the jury room.

2

Judge Tucker inquired of the jurors whether they would reach a verdict that night, and the jurors nodded in affirmation. Neither Northcutt, his counsel, the court reporter, nor the prosecutor was present when this interaction occurred.

¶4 After the jury announced its verdict, Northcutt timely moved for a new trial under § 46-16-702, MCA, based on Judge Tucker's contact with the jury. Northcutt submitted affidavits from two jurors recounting the encounter with Judge Tucker. The State opposed the motion, and responded with affidavits from the two bailiffs who were situated outside the jury room door during the encounter. All affidavits recalled that Judge Tucker approached the jury room while the jury was deliberating, briefly addressed the jury, and left. The bailiffs did not recall the specifics of what Judge Tucker said, but the jurors recounted that Judge Tucker asked how the jury was coming or whether it would finish that night, and the jurors nodded in assent. The bailiffs said that Judge Tucker never left the doorway; one of the jurors said that Judge Tucker entered the jury room. In his reply brief on the motion, Northcutt attached a second affidavit from one of the jurors, which stated that the juror felt that the interaction was an instruction to the jury "to complete our deliberations that evening." The District Court held a hearing on the matter in July 2013. The court's clerk testified regarding Northcutt's counsel's absence from the courtroom during the jury's deliberations. The court denied Northcutt's motion, and he appeals.

## STANDARD OF REVIEW

¶5 We exercise plenary review over claimed violations of a defendant's right to be present at a critical stage in the proceedings and right to a public trial. *State v. Charlie*, 2010 MT 195, ¶ 21, 357 Mont. 355, 239 P.3d 934.

## DISCUSSION

¶6 The confrontation clause of the Sixth Amendment and the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution provide a criminal defendant the right to be present during criminal proceedings. *United States v. Gagnon*, 470 U.S. 522, 526, 105 S. Ct. 1482, 1484 (1985) (per curiam). Article II, Section 24 of the Montana Constitution does the same. Mont. Const. art. II, § 24 ("In all criminal prosecutions the accused shall have the right to appear and defend in person . . . ."). A reversible violation of this right occurs when (1) the defendant is excluded from a critical stage of his prosecution, and (2) prejudice results. *United States v. Collins*, 665 F.3d 454, 459-60 (2d Cir. 2012); *State v. Godfrey*, 2009 MT 60, ¶ 25, 349 Mont. 335, 203 P.3d 834.

¶7 Article II, Section 24 of the Montana Constitution and the Sixth Amendment of the United States Constitution provide a criminal defendant the right to a public trial. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."); Mont. Const. art. II, § 24 ("In all criminal prosecutions the accused shall have the right to . . . a speedy public trial . . . ."). "The right to an open public trial is a shared right of the accused and the public, the common concern being the

4

assurance of fairness." *Press-Enterprise Co. v. Super. Court of Cal.*, 478 U.S. 1, 7, 106 S. Ct. 2735, 2739 (1986) (*Press-Enterprise II*). "The guarantee [of a public trial] has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution. The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power." *People v. Webb*, 642 N.E.2d 871, 874 (Ill. Ct. App. 1994) (alteration in original and citation omitted).

¶8      In Montana, the public's right to access court proceedings is protected by Article II, Section 16, which guarantees that "[c]ourts of justice shall be open to every person." Openness of court proceedings "enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Press-Enterprise Co. v. Super. Court of Cal.*, 464 U.S. 501, 508, 104 S. Ct. 819, 823 (1984) (*Press-Enterprise I*). Violation of the right to a public trial may be structural error. *Waller v. Georgia*, 467 U.S. 39, 49 n. 9, 104 S. Ct. 2210, 2217 n. 9 (1984); *State v. Matt*, 2008 MT 444, ¶ 31, 347 Mont. 530, 199 P.3d 244, *overruled on other grounds by Charlie*, ¶ 45. The U.S. Supreme Court has made clear that "[t]he presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise I*, 464 U.S. at 510, 104 S. Ct. at 824.

¶9      Not every momentary closure to the public, however, will implicate or violate the right to a public trial. *See United States v. Ivester*, 316 F.3d 955, 960 (9th Cir. 2003)

5

(holding that "routine jury administrative matters that have no bearing on [the defendant]'s ultimate guilt or innocence" are too trivial to implicate the right). *See also Webb*, 642 N.E.2d at 875 (commenting that "a few minutes of discussion between the judge and the attorneys" was "de minimis").

¶10 Northcutt relies on *State v. Tapson*, 2001 MT 292, 307 Mont. 428, 41 P.3d 305, to argue that his right to presence and right to a public trial were violated by Judge Tucker's interaction with the jurors in the jury room. In *Tapson*, we overturned a verdict after a district judge, without the defendant or defense counsel present, entered the jury room while the jury was deliberating, and no record existed of what transpired. *Tapson*, ¶ 39. Citing the defendant's rights to presence and a public trial, we adopted "the rule that absent a contemporaneous, personal, knowing, voluntary, intelligent and on-the-record waiver by the defendant, if a judge enters the jury room while the jury is present and without counsel, the defendant, and the court reporter, reversal will be automatic." *Tapson*, ¶ 32.

¶11 Northcutt argues that *Tapson*'s "automatic reversal" language compels a new trial in this case. But *Tapson* was based on the lack of a record of what transpired in the jury room, making "it impossible to say that, beyond a reasonable doubt, there was no prejudice to the defendant, and therefore [the interaction was] harmless error." *Tapson*, ¶ 31 (quoting *Arizona v. Hilliard*, 561 P.3d 892, 897 (Ariz. Ct. App. 1982)). In the years since, we have repeatedly identified the lack of a record as a determinative factor in *Tapson*. *State v. Wilson*, 2013 MT 70, ¶ 27, 369 Mont. 282, 297 P.3d 1208 (contrasting

6

the case before it with *Tapson*, in which "[t]he lack of a record prevented this Court from determining that no possibility of prejudice existed"); *State v. Riggs*, 2005 MT 124, ¶ 53, 327 Mont. 196, 113 P.3d 281 ("In *Tapson*, the judge's entry alone into the jury room could have prejudiced the defendant, and the deficit in the record made it impossible to say beyond a reasonable doubt that it did not."); *State v. Kennedy*, 2004 MT 53, ¶¶ 33-34, 320 Mont. 161, 85 P.3d 1279 (concluding that a judge's interaction with a juror was preserved in a record and was accordingly susceptible to review for prejudice). We recently reaffirmed that right of presence claims are subject to waiver and harmless error. *State v. Reim*, 2014 MT 108, ¶¶ 36-40, 374 Mont. 487, 323 P.3d 880.

¶12    In this case, the court made a record of what transpired in the jury room between Judge Tucker and the jurors. Four witnesses—two jurors and two bailiffs—signed affidavits and the District Court held a hearing in which it took live testimony on the matter. All witnesses were in substantial agreement about what transpired: Judge Tucker approached the jury room, inquired whether the jury would finish that night, and left. Because the record provides a means to determine whether Northcutt's rights were violated and whether he was prejudiced, reversal in this case, unlike in *Tapson*, is not automatic. Rather, reversal depends on the facts in the record and the nature of the rights that Northcutt asserts.

¶13    As a threshold matter, we consider whether the juror affidavits properly were before the court. Two of the witnesses who submitted affidavits on the interaction at issue were jurors. On the new trial motion, the District Court ruled that the jurors'

7

affidavits were inadmissible under M. R. Evid. 606. M. R. Evid. 606(b) states, as a general rule, that "a juror may not testify as to any matter or statement occurring during the course of deliberations." However, "a juror may testify in an affidavit" on "whether any outside influence was brought to bear upon any juror." M. R. Evid. 606(b)(2). While the jury was deliberating, Judge Tucker was outside the course of those deliberations, and Judge Tucker's communication had the potential to influence the jury. The jurors' affidavits are admissible under M. R. Evid. 606(b)(2).

¶14 The first right that Northcutt asserts is the right to presence, which requires that we employ a two-step analysis to determine whether Northcutt was absent from a critical stage of his proceedings and whether he was prejudiced. *See Godfrey*, ¶ 25. In *Matt*, we described the federal constitutional right to be present. Rooted in both confrontation and due process rights, a defendant has the right to be present at any step in the proceedings in which the defendant's "presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Matt*, ¶ 16 (quoting *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 2667 (1987)). "Separate and independent of this federal right," we discussed Article II, Section 24 of the Montana Constitution's guarantee of "the right to appear and defend in person." *Matt*, ¶ 17. A critical stage, we explained, is a step in the proceeding "where there is potential for substantial prejudice to the defendant." *Matt*, ¶ 17 (quoting *Ranta v. State*, 1998 MT 95, ¶ 17, 288 Mont. 391, 958 P.2d 670). Combined, to determine whether a defendant was absent from a critical stage of the proceedings, we examine the effect that a defendant's presence could have on

8

the proceeding from which he was absent and ask whether the absence could have potentially and substantially prejudiced the defendant. *See Matt*, ¶¶ 16-17; *State v. Schenk*, 151 Mont. 493, 499, 444 P.2d 861, 864 (1968) ("[A] defendant must be present when his presence bears, *or may fairly be assumed to bear*, a relation, reasonably substantial, to his opportunity to defend.") (emphasis supplied).

¶15   The Concurrence suggests that we need examine only whether Northcutt actually was prejudiced to determine whether he was absent from a critical stage. Concurrence, ¶¶ 26-29. This conflicts with our rulings that it is the *potential* for prejudice that matters in our analysis. *E.g.*, *State v. White*, 2014 MT 335, ¶ 19, 377 Mont. 332, 339 P.3d 1243; *State v. Robertson*, 2014 MT 279, ¶ 37, 376 Mont. 471, 336 P.3d 367; *Matt*, ¶ 17.

¶16   We established in *Tapson* that a communication between a judge and a deliberating jury in the jury room holds the potential to substantially prejudice a defendant. *Tapson*, ¶¶ 30, 39.[1] While jurors deliberate in the jury room, the whole case rests in the balance. Introducing an interaction with the judge into that sensitive stage of the proceedings is "pregnant with possibilities for error." *Tapson*, ¶ 18 (quoting *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 460, 98 S. Ct. 2864, 2885 (1978)). We disagree with the Concurrence's suggestion that a defendant's presence at the interaction between a judge and a deliberating jury in a jury room is "useless." Concurrence, ¶ 30 (quoting

---

[1] The Concurrence would overrule *Tapson*. Concurrence, ¶ 31. No party to this case has argued for that position, or for overruling our cases defining a critical stage by the potential for prejudice. Similar to the United States Supreme Court, "[t]hough from time to time we have overruled governing decisions that are unworkable or are badly reasoned, we have rarely done so on grounds not advanced by the parties." *United States v. Int'l Bus. Mach. Corp.*, 517 U.S. 843, 856, 116 S. Ct. 1793, 1801 (1996) (internal citations and quotations omitted); *Beach v. State*, 2015 MT 118, ¶ 29, 379 Mont. 74, 348 P.3d 629 (plurality).

9

*Schenk*, 151 Mont. at 499, 444 P.2d at 864). A defendant present at such an encounter can "hear and see the proceedings" to create a record, and ensure "the preservation of his rights" should the interaction stray from administrative matters. *Matt*, ¶ 16. Moreover, in the final analysis, a defendant's right to be present may keep judges from engaging in such highly discouraged interactions in the first place, "safeguard[ing] the public's interest in a fair and orderly judicial system." *Matt*, ¶ 16. For these reasons, we reaffirm today that "the jury room door must remain closed to judges." *Tapson*, ¶ 17. *See also United States v. Smith*, 31 F.3d 469, 471 (7th Cir. 1994) ("The unusual practice of a judge entering the jury room to speak privately with jurors is almost certain to run afoul of a defendant's right to be present during trial proceedings.").

¶17 The affidavits in this case diverge about whether Judge Tucker, when speaking to the jurors, entered the jury room or remained in the doorway of the jury room without entering. Either way, the direct interaction between the judge and the jurors in the jury room was improper, as an interaction between a judge and a deliberating jury in the jury room constitutes a critical stage of the proceedings. Northcutt was not present or aware of the interaction when it occurred. His right to presence accordingly was violated.

¶18 We conclude, however, that Northcutt's absence from the judge's brief interaction with the jury "was not structural in nature, and should be considered under the harmless error analysis." *Charlie*, ¶ 41.[2] Under this analysis, the State must demonstrate that "there is no reasonable possibility" that the violation prejudiced the defendant. *Matt*,

---

[2] "Structural defects are constitutional violations which so infect and contaminate the framework of a trial as to render it fundamentally unfair, requiring automatic reversal." *Charlie*, ¶ 40.

¶ 38. As mentioned, in *Tapson*, there was no record of the interaction between the judge and the jury, so there was no way for the State to make that demonstration, and reversal accordingly was necessary. *Tapson*, ¶ 31.

¶19 As noted, there is a record of the interaction at issue in this case. All four witnesses testified that the extent of the interaction was Judge Tucker's inquiry whether deliberations would come to a close that night. The interaction was "very brief." Despite the seemingly innocuous nature of the interaction, one juror testified that she felt that the judge was, through the interaction, "instructing us, the jury, to complete our deliberations that evening." Although the State bears a significant burden to show lack of prejudice, review of the record convinces us that there is not a reasonable possibility that Northcutt was in fact prejudiced by the jurors' interaction with Judge Tucker. None of the witnesses testified that Judge Tucker actually instructed the jury to, or suggested that the jury must, finish deliberations that night, and the paucity of any other information from the witnesses forecloses any argument that the judge engaged in additional communication. The verdict that the jury returned—finding Northcutt guilty on three counts and not guilty on another—does not suggest that the jury abdicated its responsibility in order to reach a result quickly. Under these circumstances, the violation of Northcutt's right to presence is not reversible error.

¶20 Again relying on *Tapson*, Northcutt also asserts violation of the right to a public trial. In *Tapson*, without much analysis on the nature of that right, we stated that a judge

11

entering the jury room during deliberations implicated the right to a public trial. *Tapson*, ¶¶ 21, 33.

¶21 To determine whether a closure to the public violates the right to a public trial or is merely trivial, courts generally look toward how the closure relates to the interests a public trial is designed to protect, as well as the scope and duration of the closure, and whether the trial court intentionally effectuated the closure. *See Constant v. Pa. Dep't of Corr.*, 912 F. Supp. 2d 279, 305 (W.D. Pa. 2012) (citation omitted).

¶22 The scope, duration, and context of the closure in this case lead to the conclusion that the closure did not impair the fairness of Northcutt's trial. The interaction between Judge Tucker and the jury occurred after evidence and argument had concluded, and involved no witnesses or presentation of testimony. Moreover, unlike in *Tapson*, where the lack of a record meant that the interaction between the judge and the jurors could have lasted for as long as eleven minutes and concerned any number of subjects, *Tapson*, ¶¶ 11, 30, here, the interaction was only a few moments and undisputedly concerned an administrative matter. *See Ivester*, 316 F.3d at 960. In the alternative to personal contact with the jury, Judge Tucker could have written a note inquiring whether it would finish that night, had a bailiff deliver the note, and made a contemporaneous record of these actions. But there is nothing in the record suggesting that Judge Tucker acted deliberately to keep the public out of the trial proceedings. The appearance of fairness is satisfied by having the judge's administrative interaction with the jury placed on the record after allowing both parties an opportunity to present evidence on the matter. *See*

12

*Washington v. Sublett*, 292 P.3d 715, 724 (Wa. 2012) (holding that trial court's in-chambers discussion with counsel to consider a jury question and the court's answer did not violate public trial right where it was then placed on the record). We conclude that the infringement on Northcutt's right to a public trial was trivial.

## CONCLUSION

¶23 We affirm the judgment of conviction and the District Court's denial of Northcutt's motion for new trial.


/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT


Justice Laurie McKinnon, specially concurring.

¶24 I do not agree that an ex parte communication between a judge and jury about what the jury would like for dinner and whether they wished to deliberate into the evening constitutes a critical stage of the proceeding. Instead, I would evaluate Northcutt's presence claim to determine whether "his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge," *Snyder v. Massachusetts*, 291 U.S. 97, 105-06, 54 S. Ct. 330, 332 (1934), without first determining whether the communication occurred during a "critical stage" of the proceeding.

13

¶25 The Court's conclusion that a communication between a judge and jury about a housekeeping matter automatically constitutes a critical stage of the proceedings is inherently tied to our decision in *Tapson*, which deemed any communication between a judge and deliberating jury reversible error. In finding that the communication was a critical stage of the proceedings, our analysis fails—and we have put the proverbial "cart before the horse." Such an analytical framework necessarily requires a conclusion that Northcutt's absence during a housekeeping matter rose to a constitutional violation of his right to be present and consequently directs the Court's inquiry to whether the constitutional violation was prejudicial. *See State v. Charlie*, 2010 MT 195, 357 Mont. 355, 239 P.3d 934. In my view, absence from a critical stage of the proceeding is intolerable and reversible error. In determining whether there was a violation of Northcutt's right to be present, the Court's inquiry must consider not only the *stage* of the alleged violation but *what* actually occurred. To the extent our analysis fails to apply such a framework to a right to presence claim, I disagree.

¶26 At any point during a criminal trial the *potential* exists that some aspect of a trial—such as an ex parte communication—may necessitate presence of the defendant so that his opportunity to defend against the charges may be realized. A defendant's constitutional right to be present is grounded in the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment. When considering communications between a trial judge and jury, Sixth Amendment rights are not implicated because there are no witnesses to confront. A criminal defendant does,

3

however, have a due process right "to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge. . . . [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Snyder*, 291 U.S. at 105-08, 54 S. Ct. at 332-33. In concluding that the ex parte communication was a critical stage *because* the jury was deliberating, Opinion, ¶ 17, the Court strays from this fundamental inquiry and fails to recognize the significance of considering what actually occurred. The Court finds the communication occurred during a critical stage of the proceeding without first determining whether Northcutt's presence would have a substantial relationship to his opportunity to defend.

¶27 The concept of a "critical stage" of the proceeding is drawn from precedent of the United States Supreme Court construing the Sixth Amendment and a criminal defendant's right to counsel. The right to the assistance and advice of counsel was first extended from the trial to proceedings outside of the trial in *Powell v. Alabama*, 287 U.S. 45, 53 S. Ct. 55 (1932), when the Court determined a criminal defendant had the right to counsel at arraignment. By extending the right to counsel beyond trial, the Court recognized that an arraignment was a "critical stage" of the proceeding. Precedent of the Court following *Powell* further defined the right to counsel by identifying other "critical stages" of the proceeding, such as a pre-trial identification. *United States v. Wade*, 388 U.S. 218, 87 S. Ct. 1926 (1967). Pursuant to this authority, a violation of the right to counsel during a critical stage of the proceeding requires reversal, regardless of what has

4

transpired. However, while a criminal defendant may not be denied his Sixth Amendment right to counsel at any time during a critical stage of the proceeding—regardless of the record that was created or whether substantial prejudice results from the violation—a criminal defendant has a right to be present only at those critical stages of the proceeding *"if his presence would contribute to the fairness of the procedure."* *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 2667 (1987) (emphasis supplied). The distinction may appear to be without a difference; but, nevertheless is necessary in order that the Court not be led to the conclusion that a communication about a housekeeping matter constitutes a critical stage of the proceeding.

¶28 *State v. Matt*, 2008 MT 444, 347 Mont 530, 199 P.3d 244, was the first instance in which this Court applied a "critical stage" analysis to a right to presence claim. This Court determined that Matt had a right to be present during legal argument on his motion for judgment of acquittal *because* it was a critical stage of the proceeding. However, as the phrase is used in right to counsel jurisprudence, the trial itself is a critical stage of the proceedings for which a right to counsel attaches. No one would argue that the right to counsel only attached to portions of the trial. Therefore, the issue is not whether a defendant's absence takes place at a "critical stage" of the trial; rather, the inquiry is whether his presence has "a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Snyder*, 291 U.S. at 105-06. Maintaining this distinction between the analysis to be applied to a right to presence claim and a right to counsel claim is significant, and, had we properly maintained this distinction, the Court

5

would not have found error in a judge inquiring whether the jury would like pizza. The distinction ignored by this Court since *Matt* was recognized by the Supreme Court in *Stincer* when it refused to apply a critical stage analysis to a right of presence claim based on the Confrontation Clause. "The question whether a particular proceeding is critical to the outcome of a trial is not the proper inquiry in determining whether the Confrontation Clause has been violated. The appropriate question is whether there has been any interference with the defendant's opportunity for effective cross-examination." *Stincer*, 482 U.S. at 744 n.17. The Court further held

> The fact that a stage in the proceeding is critical to the outcome of a trial may be relevant to due process concerns. Even in that context, however, the question is not simply whether, 'but for' the outcome of the proceeding, the defendant would have avoided conviction, but whether the defendant's presence at the proceeding *would have contributed to the defendant's opportunity to defend himself against the charges*.

*Stincer*, 482 U.S. at 744 n.17 (emphasis supplied).

¶29 In *Tapson*, this Court held that contact between a judge and juror was a critical stage and the defendant's absence from the communication required reversal. *Tapson*, ¶ 33. We have struggled in our attempts to apply the *Tapson* analysis and have distinguished *Tapson*, in large part, on the absence of any record demonstrating what actually transpired between the trial judge and jury. Since *Tapson,* we have held that not every ex parte communication between a trial judge and a juror results in a deprivation of a defendant's constitutional right to be present during his trial. In *State v. Riggs*, 2005 MT 124, 327 Mont. 196, 113 P.3d 281, the court met with counsel and a juror outside of the defendant's presence. The juror was concerned, after the fifth day of trial, he might

6

have to forfeit a flight scheduled to depart the next day. *Riggs*, ¶ 45. In concluding that Riggs was not denied his right to be present during a critical stage of the proceeding, we relied on *United States v. Gagnon*, 470 U.S. 522, 105 S. Ct. 1482 (1985), where the United States Supreme Court ruled that a defendant's due process rights were not violated when the court met with a juror and counsel in chambers, without Gagnon, to address the juror's concerns that one of the defendant's was sketching the jury. The Court in *Gagnon* stated:

> The mere occurrence of an ex parte conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right. The defense has no constitutional right to be present at every interaction between a judge and a juror . . . .

*Gagnon*, 470 U.S. at 526, 105 S. Ct. at 1484 (brackets omitted).

¶30 Our inquiry in evaluating presence claims must be whether the defendant's "presence bears, or may fairly be assumed to bear, a relation, reasonably substantial, to his opportunity to defend." *State v. Schenk*, 151 Mont. 493, 499, 444 P.2d 861, 864 (1968) (quoting *Snyder*, 291 U.S. at 107, 54 S. Ct. at 332) (ellipsis omitted). "Nowhere in the decisions of this court is there a dictum, and still less a ruling, that the Fourteenth Amendment assures the privilege of presence when presence would be useless, or the benefit but a shadow." *Schenk*, 151 Mont. at 499, 444 P.2d at 864 (quoting *Snyder*, 291 U.S. at 107, 54 S. Ct. at 332). The substance of what is involved must also be considered. Certain events, because of the nature of what occurs, may be viewed as interruptions in the stages of the trial. Periods when the court attends to housekeeping or administrative matters or addresses with counsel procedures for the introduction of

7

exhibits and evidence normally would not be considered "critical sages" or even a "stage" of the prosecution.

¶31 I agree with the Court that the communication here "undisputedly concerned an administrative matter." Opinion, ¶ 22. However, it is precisely for this reason that I disagree with the Court that it was a critical stage of the proceeding. If the matter is administrative it cannot have a relation, reasonably substantial, to Northcutt's opportunity to defend. It is fundamentally inconsistent to find that an administrative matter is a critical stage of the proceeding. Communication between a judge and jury about dinner arrangements is unrelated in any way to the case being decided. I therefore would conclude that Northcutt did not have a right to be present and that there was no constitutional violation necessitating harmless or structural error review. To the extent *Tapson* holds otherwise, I would reverse *Tapson*.

¶32 As a final note, while Northcutt has a right to a public trial pursuant to *Waller v. Georgia*, 467 U.S. 39, 104 S. Ct. 2210 (1984), we have not previously had the occasion to define the right in the context of a proceeding where the issue is reasonably in dispute. *Waller* involved the defendant's request that the hearing on his motion to suppress remain open even though the trial court had closed the hearing consistent with state law and the government's effort to maintain confidentiality of unindicted defendants. *Waller*, 467 U.S. at 42, 104 S. Ct. at 2213. We have yet to address such a situation in this State, and it is unclear how Northcutt can assert a violation of his right to a public trial by his being excluded—as compared to the public being excluded—from the ex parte communication

8

at issue here. At any rate, I would refrain from first considering the issue in a proceeding where the claimed violation is the failure to allow the public to be present outside of the jury room while the jury is deliberating. I certainly would refrain from assigning structural error to a violation of that right, Opinion ¶ 8, until a more appropriate case is before us. I also cannot agree with the Court's consolidating the right to presence and the right to a public trial into one analysis. It seems to me that the rights may involve different considerations and analysis, which have not been fully developed by the parties or the Court.

¶33 For the foregoing reasons, I agree that Northcutt did not suffer a constitutional violation of his right to be present when the judge inquired of the jury regarding dinner arrangements. I do not subscribe to the Court's analysis and its determination that a housekeeping matter constitutes a critical stage of the proceeding. Finally, I would not evaluate Northcutt's right to public trial claim, except to indicate that the right does not extend to allowing members of the public to be present outside the jury room when the jury is deliberating.

/S/ LAURIE McKINNON

Justice Jim Rice joins the special concurrence.

/S/ JIM RICE

9